Claire DeNICOLA, Plaintiff, Appellant,

v.

**CUNARD LINE LIMITED,**
**Defendant, Appellee.**

**No. 80–1215.**

United States Court of Appeals,
First Circuit.

Argued Sept. 10, 1980.

Decided Feb. 6, 1981.

Rehearing Denied March 30, 1981.

**6**

Leo M. Goldberg, Providence, R. I., and Joseph R. Palumbo, Jr., Newport, R. I., with whom Goldberg & Goldberg, Providence, R. I., and Moore, Virgadamo & Lynch, Ltd., Newport, R. I., on brief for plaintiff, appellant.

Robèrt D. Parrillo, Providence, R. I., with whom A. Lauriston Parks, and Hanson, Curran & Parks, Providence, R.˙I., on brief, for defendant, appellee.

Before CAMPBELL and BOWNES, Circuit Judges, NELSON,* District Judge.

NELSON, District Judge.

At issue in this appeal is the enforceability of a condition in an ocean voyage ticket limiting the time in which a passenger can bring an action against the carrier for personal injury. On November 22, 1975, while sailing from France to Boston aboard the Queen Elizabeth II, the plaintiff sustained an injury when the ship lurched in heavy seas. Almost twenty-two months later, on September 12, 1977, she brought suit against the shipowner, alleging that the vessel had been travelling through a heavy storm at an excessive rate of speed in order to make up for a delay in departure. The defendant sought to rely on a provision in the "passage contract ticket" requiring that any suit "for loss of life or bodily injury to any passenger" be commenced "within one year from the day when the death or injury occurred." [1] In a comprehensive opinion, the district court ruled that this condition was binding upon the plaintiff and therefore granted the defendant's motion for summary judgment and dismissed the suit as time-barred.

The plaintiff's travel arrangements were part of a package deal whereby she flew to Europe by plane and returned by ship. She purchased the passage ticket on November 7, 1975 from a travel agent in Providence, Rhode Island and had it in her possession when she commenced her travels one week later. On November 20, she boarded the Queen Elizabeth II for the seven-day voyage to Boston, three of which she spent confined to her cabin following her injury. The plaintiff retained possession of the ticket, minus several detachable coupons, not only during her trip but for some four years thereafter.

After carefully examining the layout of the ticket, the district court concluded as a matter of law that the notice provided therein concerning the existence and importance of the terms and conditions of contract was sufficient to make them "a formal part of the contract." It followed that the limitation on time for filing suit was binding on the plaintiff notwithstanding her alleged lack of knowledge thereof—an allegation that the court accepted as true for purposes of the motion. On appeal, the plaintiff argues in the alternative that (1) the court's ruling was legally erroneous—in particular, that the limitation was not a part of the contract because she did not "deliberately accept" it—and (2) whether

---

* Of the District of Massachusetts, sitting by designation.

1. In pertinent part, this provision states:
   No suit, action or proceeding against the Company or the ship, or the agents of either, shall be maintainable for loss of life or bodily injury to any passenger unless (a) written notice of claim be delivered to the Company ... within six months from the day when the death or injury occurred, and (b) such notice having been given, the suit, action or proceeding is commenced within one year from the day when the death or injury occurred.

the limitation was a part of the contract was a disputed question of fact, rendering disposition by summary judgment inappropriate.

The issue of when conditions appearing in a steamship ticket are incorporated into the contract of passage and therefore binding on a passenger is one that this court has never had occasion to examine.[2] But other courts, primarily those in the Second Circuit, have charted these shoals extensively. *See generally* Annot., 5 A.L.R.Fed. 394 (1970). The Supreme Court defined the general parameters of this inquiry in *The Majestic*, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897). There, in defense of a suit brought by three passengers whose luggage had been damaged by sea water, the carrier sought to invoke a ticket provision limiting its liability "for loss of or injury to or delay in delivery of luggage." *Id.* at 378, 17 S.Ct. at 599. The front of the ticket contained a "box" bearing the passengers' names, alongside which was an agreement of carriage signed by an agent of the shipowner. *Id.* at 377, 17 S.Ct. 598. At the bottom of the ticket face, underneath several notices to passengers, was the instruction "See Back" in bold face type. On the back, beneath the heading "Notice to Passengers," appeared the statement "This contract is made subject to the following conditions," after which were listed in fine type seven conditions including the one limiting liability for damage to luggage. *Id.* 166 U.S. at 378, 17 S.Ct. at 599. The Court ruled that the provisions on the back of the ticket "were not included in the contract proper, in terms or by reference." *Id.* at

**2.** There are two cases from this circuit involving the effect of limiting conditions in passenger tickets, but neither case examined the contractual status of such provisions. In *The Kronprinzessin Cecilie*, 238 F. 668 (1st Cir. 1916), *rev'd. on other grounds*, 244 U.S. 12, 37 S.Ct. 490, 61 L.Ed. 960 (1917), an eastbound transatlantic steamer retreated to an American port upon receipt of a premature report that war had broken out in Europe. Two passengers subsequently brought suit but failed to notify the shipowner of their claims within the time limit prescribed by a provision in their tickets. This court enforced the limitation on the theory that "each libelant is suing upon the contract and must take it with all the stipulations which it contains." *Id.* at 685 (opinion of Bingham, J.); *accord, id.* at 692 (on petition for rehearing). By contrast, the plaintiff in the present case is suing in tort. In *Jansson v. Swedish American Line*, 185 F.2d 212 (1st Cir. 1950), the appellant challenged the lower court's ruling that a one-year limitation for filing personal injury suits, appearing on the back of the passage ticket, was binding upon him as part of the contract. But without deciding the question of incorporation, this court reversed and remanded on the ground that the district court should have applied Swedish rather than American law to resolve that issue. On the subject of conflict of laws, we note that the ticket in the case at bar contains a provision directing that "[a]ll questions arising on this contract ticket shall be decided according to English law with reference to which this contract is made." Nevertheless, the district court correctly rested its decision on the "general maritime law" of the United States. *Jansson v. Swedish American Line*, 185 F.2d at 216. Giving effect to this provision for the purpose of determining whether it and the other ticket conditions should be given effect obviously would be putting the barge before the tug. *See, e. g., Siegelman v. Cunard White Star*, 221 F.2d 189, 193 (2d Cir. 1955) (in case involving identical choice-of-law provision, court employs English law to interpret a condition limiting time for filing suit but examines American law to determine initially whether that condition is part of contract); *McQuillan v. "Italia" Societa Per Azione Di Navigazione*, 386 F.Supp. 462, 467 n.11 (S.D.N.Y.1974), *aff'd*, 516 F.2d 896 (2d Cir. 1975). Since the plaintiff here is an American citizen seeking redress for an injury which occurred on the high seas during a voyage for which she contracted in the United States and which terminated in an American port, there were sufficient contacts with this country to warrant application of its law. *See, e. g., Mulvihill v. Furness, Withy & Co.*, 136 F.Supp. 201, 206 (S.D.N.Y.1955). *Compare Jansson v. Swedish American Line*, 185 F.2d at 219–20 (Swedish law governs effect of ticket provision limiting time for filing suit where contract was made in Sweden and injury occurred on Swedish vessel in Swedish territorial waters). Moreover, although we have conducted no extensive inquiry, it appears that American and English law on the incorporation issue are similar; the two seminal cases on this question in the United States each relied on English precedent. *See The Majestic*, 166 U.S. 375, 381–84, 386, 17 S.Ct. 597, 600, 41 L.Ed. 1039 (1897); *Silvestri v. Italia Societa Per Azione Di Navigazione*, 388 F.2d 11, 17 (2d Cir. 1968). In any event, neither party has offered proof of, or otherwise sought to rely on English law at any stage of this proceeding. *See* Fed.R.Civ.P. 44.-1.

385, 17 S.Ct. at 601. As a result, they would be binding on the passengers only if they had been "distinctly declared and deliberately accepted." *Id.* at 386, 17 S.Ct. at 601, *quoting Henderson v. Stevenson*, L.R. 2 S. & D.App. 470 (1875). Since none of the passengers had read or otherwise become aware of the limitation on liability, that provision was deemed inapplicable.

Following in *The Majestic's* wake, courts for many years have approached the incorporation issue by means of a two-step analysis: examining the passage ticket before them to identify the contract proper, and then determining whether the particular condition in question was contained or referred to in that contract. For purposes of the first inquiry, the place of the carrier's signature [3] in the ticket typically has been decisive. "[O]nly the contract proper charges the passenger, and the contract is taken as those words which the carrier in some way authenticates by its own signature ...." *Maibrunn v. Hamburg-American S.S. Co.*, 77 F.2d 304, 306 (2d Cir. 1935). Under this approach, the case law has developed along three distinct lines depending on the layout of the ticket involved. In one group of cases, the carrier's signature appeared at the very end of the ticket. Based on this fact, the entire contents of the ticket—including all enumerated conditions— were considered within the actual text of the contract and thus binding on the passenger despite his lack of knowledge thereof.[4] A second category has involved tickets similar to that in *The Majestic*, in which a "box" on the ticket face bore the passenger's name and other travel information above the carrier's signature, alongside or beneath which was a notice referring to various conditions appearing elsewhere in the document. In this situation, enforcement of a limiting condition has been denied on the ground that "there is nothing above the carrier's signature to incorporate [it] expressly or by reference" into the contract proper. *The Kungsholm*, 86 F.2d 703, 704 (2d Cir. 1936).[5] Finally, in cases where limiting conditions appeared in the margin or on the back of a ticket but a direct reference to them preceded the carrier's signature, the conditions have been deemed incorporated by reference into the contract and therefore enforceable. *See, e. g., Geller v. Holland-America Line*, 298 F.2d 618, 619 (2d Cir.) (per curiam), *cert. denied*, 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 403 (1962); *Foster v. Cunard White Star, Ltd.*, 121 F.2d 12, 13 (2d Cir. 1941) (per curiam).[6]

*Silvestri v. Italia Societa Per Azione Di Navigazione*, 388 F.2d 11 (2d Cir. 1968), placed this last category of cases on a slightly different tack. There, in the "box" on the ticket face, beneath the caption "Passage Contract" and above the validating stamp of the issuing travel agent, appeared the statement "Subject to the conditions printed on the cover of this ticket which form part of this contract." *Id.* at 14. Despite this apparent incorporation by reference, the court refused to enforce a one-year limitation on filing suit on the ground that the contractual "warning" was not sufficiently "eye-catching." *Id.* at 18. Following a careful survey of the case law, Judge Friendly concluded that "the thread that runs implicitly through the cases sus-

---

**3.** The passenger's signature is not necessary for formation of a contract; his acceptance and use of the ticket implies assent to the contractual terms. *E. g.*, 1 S. Williston, *Contracts* § 90B (3d ed. 1957).

**4.** *See, e. g., Baron v. Compagnie Generale Transatlantique*, 108 F.2d 21, 23 (2d Cir. 1939); *Ager v. D/S A/S Den Norske Afrika-Og Australielinie Wilhelmsens Dampskibsaktieselskab*, 336 F.Supp. 1187, 1188–89 (S.D.N.Y.1972); *Murray v. Cunard S.S. Co.*, 235 N.Y. 162, 166, 139 N.E. 226, 228 (1923) *(semble)*. *See also Miller v. Lykes Bros. S.S. Co.*, 467 F.2d 464, 466 (5th Cir. 1972) (passenger's signature at end of ticket).

**5.** *Accord, e. g., Bellochio v. Italia Flotte Riunite Cosulich Line*, 84 F.2d 975, 976 (2d Cir. 1936); *Maibrunn v. Hamburg-American S.S. Co.*, 77 F.2d 304, 305–06 (2d Cir. 1935); *Baer v. North German Lloyd*, 69 F.2d 88, 89–90 (2d Cir. 1934); *Toohill v. Cunard S.S. Co.*, 130 F.Supp. 128, 129 (D.Mass.1955).

**6.** A description of the tickets involved in *Geller* and *Foster* appears in *Silvestri v. Italia Societa Per Azione Di Navigazione*, 388 F.2d 11, 16 & n.5 (2d Cir. 1968).

taining incorporation is that the steamship line had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights." *Id.* at 17. By contrast, the Italian line had done "[n]othing whatever . . . to impress the importance of the terms and conditions upon the passenger." *Id.* Not only did the reference to the subsequent conditions—unlike almost all the other captions in the box—appear in "ordinary lower-case one-eighteenth inch type," but the "inconspicuousness of [this statement] was increased by the fact that [it was] squeezed immediately below a caption in bold face and to the left of one in capital letters." *Id.* at 14.

The specific holding in *Silvestri*—that a notice appearing in the contract proper must meet a standard of "reasonable communicativeness," *Lipton v. National Hellenic American Lines*, 294 F.Supp. 308, 311 (E.D.N.Y.1968), in order to incorporate into the contract those conditions to which it makes reference—is a narrow one pertaining only to the incorporation-by-reference category of cases. *See Miller v. Lykes Bros. S. S. Co.*, 467 F.2d 464, 466 (5th Cir. 1972). Subsequent decisions, however, have taken a more expansive view, suggesting that the *Silvestri* approach should govern the analysis in most if not all steamship ticket cases. Specifically, the courts appear to have deemphasized such traditionally significant factors as the placement of the carrier's signature and the contents of the contract proper and focused instead on the adequacy of notice appearing anywhere in the ticket documents. The decision in *McQuillan v. "Italia" Societa Per Azione Di Navigazione*, 386 F.Supp. 462 (S.D.N.Y. 1974), *aff'd*, 516 F.2d 896 (2d Cir. 1975),[7] is illustrative. At issue there was the revised passage contract of the same steamship line involved in *Silvestri*. The court noted that the "ticket" portion of the contract had remained "substantially the same" but was now enclosed in a booklet and preceded by six pages of numbered conditions. *Id.* at 465. Beginning on the cover and continuing on the second page appeared a "clearly legible" notice directing the passenger's attention to the various conditions,[8] *id.* at 466, and at the bottom of the ticket itself appeared the words "terms and conditions: pages 1 through 6." *Id.* at 465. Although the ticket on page seven presumably had retained the carrier's signature, the court neither mentioned this fact nor otherwise sought to identify the contract proper. Instead, it emphasized the notice appearing on the booklet cover in concluding that the "importance" of the conditions had been "reasonably communicate[d]" to the passenger. *Id.* at 466.[9]

Since the location of a carrier's signature in these form contracts is—at least from the passenger's perspective—largely fortui-

---

**7.** With respect to the circuit court's affirmance in *McQuillan*, the court in *DeCarlo v. Italian Line*, 416 F.Supp. 1136 (S.D.N.Y.1976), noted:

Although the official Fed. 2 citation would suggest that the affirmance was without opinion and thus not authoritative . . . , the actual order of affirmance on file with this court recites that the "judgment of [the] District Court be and it hereby is affirmed on the opinion of Judge Werker, reported at 386 F.Supp. 462."

*Id.* at 1137 n.1 (citations omitted).

**8.** In pertinent part, this notice read as follows:

Terms of Passage Contract. Passengers are kindly requested to read the conditions of this contract before accepting. "Italia" . . . agrees to provide (continued page 2)

The notice continued on the second page "in smaller but still legible type":

the transportation described herein to the person or persons named herein, subject to the terms set forth in this passage contract, printed on this page and on pages 3, 4, 5, 6. 386 F.Supp. at 466.

**9.** A similar analysis yielded a similar result in *Lipton v. National Hellenic American Lines*, 294 F.Supp. 308 (E.D.N.Y.1968). The ticket booklet there contained four pages of enumerated conditions, three pages dealing with return-voyage reservations, and then an "embarkation coupon" and five carbon copy counterparts—which contained pertinent travel information and were the only portion of the ticket filled out. The court did note that the carrier's printed signature appeared at the foot of the conditions and that the embarkation coupon and copies contained the stamped name of the issuing travel agent. But in deciding that the conditions were enforceable, the court undertook no inquiry into the extent of the contract proper. Rather, it concluded that warnings appearing on the booklet cover, at the head of the conditions and on the embarkation coupon af-

tous, the recent deemphasis on this factor in favor of a more sensitive inquiry into the "communicativeness" of all warnings of the ticket conditions is a welcome development. It remains unclear, however, whether the scope of the contract proper has lost all significance in this context. For example, it is unresolved whether ticket conditions can be deemed enforceable, despite the absence of any reference thereto appearing above the carrier's signature, because of adequate notice appearing elsewhere in the ticket documents. The post-*Silvestri* cases to date authorize the consideration of warnings appearing outside the contract proper, but do not explicitly [10] indicate that such warnings alone can suffice to render the conditions binding. Similarly, it is uncertain whether the *Silvestri* standard should apply to cases in which the carrier's signature is located at the end of the ticket, such that the conditions are directly embodied in the contract proper.[11] But in light of the layout of the ticket involved here, we find it unnecessary to resolve these questions.

The ticket closely resembles that involved in *Lipton v. National Hellenic American Lines,* 294 F.Supp. 308 (E.D.N.Y.1968). *See* note 9 *supra.* It consists of an eighteen-page booklet, bound at the left edge and measuring three and one-half inches high and seven and one-half inches wide. The ticket cover is labeled "Passage contract ticket" in large, bold-face print. At the bottom of the cover, beneath a message concerning the "fuel crisis," appears the following language in smaller, bold-face type:

> Terms and conditions of contract
>
> Notice. The attention of passengers is especially directed to the terms and conditions of this contract appearing within and it is mutually agreed that this contract ticket is issued by Cunard Line Limited and accepted by the passenger subject to such terms and conditions.

On pages two through five, the various conditions appear in readable but fine print in twenty-four numbered paragraphs, the first of which contains the provision limiting the time for filing suit. At the head of the conditions appears the phrase in bold type "Terms and Conditions of Contract

---

forded "such notice as could reasonably be expected of the existence and importance" of those conditions. *Id.* at 311. *See also Carpenter v. Klosters Rederi A/S,* 604 F.2d 11 (5th Cir. 1979); *Gardner v. Greek Line,* 388 F.Supp. 856 (M.D.Pa.1975). The court in each case, without mentioning whether or where the carrier's signature appeared on the ticket, ruled that notice of the various conditions was sufficiently conspicuous to render them binding on the passenger.

Although unnecessary to its decision, the *Silvestri* court itself implicitly endorsed this expansive approach by relying extensively on *Hood v. Anchor Line (Henderson Bros.) Ltd.,* [1918] A.C. 837. The face of the ticket there contained the signature of the carrier's agent and a conspicuous notice of subsequent conditions, but the court failed to indicate whether the latter preceded the former. *Id.* at 841. Its decision enforcing the conditions was based instead on this notice, a statement at the end of the document requesting passengers "to carefully read the above contract," and—significantly—the fact that the ticket "was enclosed in an envelope containing on the outside a finger pointing to the words 'Please read conditions of the enclosed contract.'" *Id.* at 847. Lord Chancellor Finlay shared the trial judge's inability "to conceive what further or better means the defenders could have employed to bring to the knowledge of passengers the existence of the contract conditions." *Id.* at 842.

10. The brevity of the factual descriptions in several of these cases precludes any firm generalization.

11. Several courts have offered opposing views on this question. While conceding that the Second Circuit "arguably" meant otherwise, the court in *Miller v. Lykes Bros. S. S. Co.,* 467 F.2d 464 (5th Cir. 1972), decided that *Silvestri* "did not alter the rule that provisions appearing as integral parts of the contract of passage are binding on the parties." *Id.* at 466. By contrast, in *Ager v. D/S A/S Den Norske Afrika-Og Australielinie Wilhelmsens Dampskibsaktieselskab,* 336 F.Supp. 1187 (S.D.N.Y. 1972), then-District Judge Gurfein found that a condition "was within the body of the contract," but then proceeded to examine the notice thereof and concluded: "Nor was there a failure to call the reader's attention to the fine print." *Id.* at 1188. *See also Carpenter v. Klosters Rederi A/S,* 604 F.2d 11 (5th Cir. 1979): "The controlling principle is that there must be adequate notice to the passenger of the suit time limitation *and* that such limitation be a part of the contract of passage *by the inclusion* or incorporation by reference of such limitation." *Id.* at 13 (dictum) (emphasis added).

Incorporated into and Forming part of Passage Contract Ticket," and at their foot appears the defendant's printed signature. The next five pages contain information on reservations and embarkation and a tear-out form requesting personal data, which the passenger is to complete and turn in prior to embarkation. Then follow a "Revenue Coupon" and six carbon copies, each bearing a different heading, which contain the passenger's name, pertinent travel information and the ticket fare. One of the copies, entitled "Sailing Coupon," is the only document good for passage. Each coupon contains the heading in bold-face capital letters "Cunard Passage Contract Ticket," beneath which, in smaller but otherwise identical type, appears the statement: "Issued subject to the terms and conditions printed on the inside of the cover and succeeding pages of this contract ticket which form part thereof." In the lower right-hand corner appears the signature of the issuing travel agency.

The district court made no attempt to identify the contract proper.[12] Instead, pointing to the separate notices appearing on the cover, at the head of page two and on the seven coupons, the court concluded that the conditions were binding because the defendant had done all it reasonably could to warn of both their existence and their importance. We find no error in this determination,[13] which comports with *McQuillan v. "Italia" Societa Per Azione Di Navigazione*, 386 F.Supp. at 466, aff'd, 516 F.2d 896 (2d Cir. 1975), and *Lipton v. National Hellenic American Lines*, 294 F.Supp. at 311. It is well-established that this issue constitutes a legal determination, suitable for disposition by summary judgment. *See, e. g., Carpenter v. Klosters Rederi A/S*, 604

F.2d at 13; *McQuillan v. "Italia" Societa Per Azione Di Navigazione*, 386 F.Supp. at 466, aff'd, 516 F.2d 896 (2d Cir. 1975). It also deserves emphasis that the plaintiff purchased the ticket almost two weeks before boarding the vessel, that she retained possession of it during her trip and for four years thereafter, and—significantly—that the defendant alluded to its anticipated reliance on the defenses specified in the ticket in a letter to plaintiff's attorney two weeks after the injury.[14] "[T]here is both ample time and a powerful incentive to study the passage contract ticket promptly after [an injury] has occurred ...." *Id.* These facts reinforce our conclusion that the one-year limitation operates to bar the plaintiff's suit, even if her lack of knowledge of that provision is assumed.

*Affirmed.*

---

12. At least three views are possible on this question. One might argue that the contract proper consists of all language appearing: (1) above the defendant's printed signature on page five; (2) above the travel agency's signature on the coupons (i. e., the entire booklet); or (3) only on the coupons themselves. Under the first two interpretations, of course, the conditions would be embodied directly in the contract.

13. The validity of a one-year limitation on filing suit is specifically established by 46 U.S.C.

§ 183b(a) (1970) and is not challenged by the plaintiff.

14. In response to a letter from plaintiff's attorney dated December 1, 1975 providing notice of the injury, an employee of the defendant sent a reply one week later requesting information. This letter closed: "This naturally is without prejudice to any of the rights or *defenses* of the Cunard Line Limited *under its passenger ticket* and/or as a matter of law." (emphasis added).