**MAREK, Harriet and Marek, Samuel Husband and Wife, Appellants,**

v.

**MARPAN TWO, INC. and Bahama Cruise Line, Inc.**

No. 86–1493.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Feb. 11, 1987.

Decided May 1, 1987.

As Amended May 11, 1987.

Rehearing and Rehearing In Banc Denied May 22, 1987.

Barry L. Gross, Stief, Waite, Gross, Sagoskin & Kellis, Newtown, Pa., for appellants.

Douglas H. Riblet, Rawle & Henderson, Philadelphia, Pa., for appellees.

* Hon. Joseph H. Rodriguez, United States District Court for the District of New Jersey, sitting by

Before HIGGINBOTHAM and STAPLETON, Circuit Judges, and RODRIGUEZ, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal continues the long line of cases, going back at least as far as *The Majestic*, 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897), involving the enforcement of contractual conditions that are invariably located deep in the fine print of cruise ship tickets. Because the ticket at issue here was reasonably communicative in giving notice of the existence and importance of, and in expressing, its limiting conditions, we will affirm the district court's entry of summary judgment for appellees.

### I.

The following facts are taken from appellants' complaint and from the affidavit of appellant Harriet Marek ("Marek"). At some point prior to March 1983, Marek and her friend Jackie Toombs made arrangements through the Warren County Motor Club of Warren, Pennsylvania, for a cruise aboard the S.S. VERACRUZ. Marek and Toombs traveled to Tampa, Florida, prior to the vessel's sailing date of March 12, 1983. They did not receive their cruise ticket folder, however, until they boarded the ship for departure in Tampa, at which time they together were given one ticket folder. In the boarding process, ship personnel removed one sheet of paper from this joint ticket folder. The folder, a cover containing the two remaining pages, was thereafter retained by Toombs. Marek recalls that she and Toombs, sometime after they had boarded ship, "scanned the written material on the inside of the front cover of the ticket folder, but ... [they] did not read every word that was there because the print was so small and crowded and because [they] couldn't understand most of

designation.

what was printed there." Marek also recalls that they "glanced at printed material on the outside of the back cover of the ticket folder, although [she] do[es]n't recall what that material said." Marek, at that time and later, neither read nor became aware of the printed material on the ticket's inside back cover.

The ticket folder shared by Marek and Toombs includes, as one of its terms and conditions, the following language:

6. (a) Neither the Carrier nor the Vessel shall be liable for any claim for loss of life or personal injury, whatsoever and wheresoever arising and howsoever caused, unless written notice thereof, with full particulars be given to the Carrier within six (6) months from the date of such loss of life or injury.

(b) Suit to recover on any such claim against the Carrier or the Vessel shall not be maintainable unless:

(1) The Passenger has complied with the above notice provisions; and (2) Suit is instituted within one (1) year from the date of the loss of life or bodily injury.

These time limits on the filing of personal injury actions are implicitly authorized by federal statute. 46 App.U.S.C. § 183b(a) (Supp. III 1985).[1] Other physical characteristics of the ticket folder are described below in section III.

On March 18, 1983, while the S.S. VERACRUZ was at sea, Marek slipped while walking down a stairway in the vessel, sustaining a number of severe personal injuries. More than one year later, on May 8, 1984, Marek and her husband, appellant Samuel Marek, filed this diversity action in the Eastern District of Pennsylvania against appellee Marpan Two, Inc., which owned at the relevant times the S.S. VERACRUZ, and appellee Bahama Cruise Line, Inc., which chartered the vessel for this fateful cruise.

The district court granted appellees' summary judgment motion. *Marek v. Marpan Two, Inc.*, No. 84–2214 (E.D.Pa. July 15, 1986). Marek admittedly failed to file this suit within one year of her accident, in clear violation of paragraph 6(b)(2) of her ticket contract, and the district court determined that this particular contract limitation was valid as a matter of law.[2]

## II.

We review a grant of summary judgment by applying the same test a district court should employ. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). A district court may enter summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In cases of this variety, the facts tend to be uncontested. The only issue that remains then is a wholly legal one: Are the time limitations contained in the ticket's fine print part of the passenger's contract with the owners and operators of the cruise vessel?[3] Courts thus consider it "well-established" that evaluating time limits on notice and filing of a passenger's lawsuit

---

1. Section 183b(a) provides that

 [i]t shall be unlawful for the manager, agent, master, or owner of any sea-going vessel (other than tugs, barges, fishing vessels and their tenders) transporting passengers or merchandise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred.

 46 App.U.S.C. § 183b(a) (Supp. III 1985). It "is a declaration of Congressional policy as to lawful contractual time limitations...." *Witte v.*

*Nederlandsch Amerikaansche Stoomvaart Maatschappiaj*, 96 F.Supp. 485, 486 (D.N.J.1951).

2. Marek also admits that she failed to comply with the six month written notice requirement of ticket paragraph 6(a). Because its validity flows from the identical considerations that validate the contract's one-year filing requirement for personal injury suits, we read the district court's opinion as implicitly approving both provisions.

3. In this appeal, however, Marek also claims that contested issues of material fact preclude summary judgment against her. These arguments, which concern Marek's actual awareness of the ticket's time limitation provisions and her actual opportunity to acquire such awareness,

"constitutes a legal determination, suitable for disposition by summary judgment." *DeNicola v. Cunard Line, Ltd.*, 642 F.2d 5, 11 (1st Cir.1981); *accord Barbachym v. Costa Line, Inc.*, 713 F.2d 216, 218 (6th Cir.1983). This determination, in turn, is best understood as a pair of distinct legal examinations. One focal point is the adequacy of so-called "warning language," often found on the front cover of a cruise ticket, directing a passenger to read the particular terms inside the ticket. The other focal point is the ticket terms themselves, and concerns such physical characteristics as the location of the terms within the ticket, the size of the typeface in which they are printed, and the simplicity of the language they employ. The question is thus whether, "taken together, the various notices and provisions of this cruise ticket contract" suffice legally to give effect to the time limits it contains. *Lubick v. Travel Servs., Inc.*, 573 F.Supp. 904, 907 (D.V.I. 1983). Because this is a matter of first impression in our Circuit, we begin our legal analysis by briefly summarizing and adopting the general approach that other courts have taken to this legal question.

The seminal opinion in this field, as in so many others, is one authored by Judge Henry Friendly. In *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11 (2d Cir.1968), Judge Friendly concluded that "the thread that runs implicitly through the cases sustaining [such cruise ticket time limitations] is that the steamship line had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his [or her] legal rights." *Id.* at 17. As the district court recognized, however, this statement of the legal test, if taken literally, is simply too rigid. There is no

> situation where, from hindsight, one could not imagine the shipowner doing some little bit more to draw attention to the limitation clause.... Thus, even though the courts continue to use the "all it reasonably could" language, application of the standard involves notions of reasonableness and not hypothesizing some further step the shipowner could possibly have taken.

*Marek*, No. 84–2214, mem. op. at 3 (E.D.Pa. July 15, 1986). We therefore follow in the wake of those courts, including those in our Circuit,[4] that have adopted the more practical "standard of reasonable communicativeness,"[5] *Lipton v. National Hellenic Am. Lines*, 294 F.Supp. 308, 311 (E.D.N.Y. 1968), and we apply that standard as we assess Marek's particular contentions.

### III.

### A.

■ Across the top of the ticket folder cover, beneath the words "S.S. VERA-

---

merely rehash the legal issue we address below: "whether the contractual limitation on the time for filing suit was reasonably communicated to [Marek] so that the [appellees] may rely on it." *Strauss ex rel. Strauss v. Norwegian Caribbean Lines, Inc.*, 613 F.Supp. 5, 8 (E.D.Pa.1984); *see also Shannon v. Norwegian Caribbean Lines*, 640 F.Supp. 373, 374 & n. 1 (M.D.Pa.1985) (where plaintiffs admit that they had their travel documents and tickets from a few days before their voyage until some time after they boarded ship, "no issue of material fact exists as to the question whether plaintiffs had an opportunity to read the provisions of the contract of passage but nonetheless simply failed to do so").

4. *See, e.g., Shannon*, 640 F.Supp. at 374 ("reasonably communicat[ing] to the plaintiffs the terms of the contract limiting the time for filing suit ... satisf[ies] the *Silvestri* standard"); *Valenti v. Home Lines Cruises, Inc.*, 614 F.Supp. 1, 4 (D.N.J.1984) ("The passage contract should 'reasonably communicate' to the passenger that the condition limiting liability is an important matter.") (citations omitted); *Strauss ex rel. Strauss*, 613 F.Supp. at 7 ("Numerous cases have discussed the 'reasonable communicativeness' standard [that is to be] applied to ... limitations in contracts of maritime passage...."); *Gardner v. Greek Line*, 388 F.Supp. 856, 857 (M.D.Pa. 1975) (the contract's paragraphs "are, if read, reasonably comprehensible").

5. *See, e.g., Barbachym*, 713 F.2d at 219 ("adopt[ing] the 'reasonable notice' standard of *Silvestri*"); *DeNicola*, 642 F.2d at 10 ("the recent[,] ... more sensitive inquiry into the 'communicativeness' of all warnings of the ticket conditions is a welcome development"); *McQuillan v. "Italia" Societa Per Azione Di Navigazione*, 386 F.Supp. 462, 466 (S.D.N.Y.1974) ("this passage contract reasonably communicates the importance of the terms and conditions to the passenger and therefore they are incorporated into the contract"), *aff'd*, 516 F.2d 896 (2d Cir.1975).

CRUZ" and above an impressive picture of the vessel and the words "BAHAMA CRUISE LINE," appears the following warning: "ACCEPTANCE OF THIS TICKET CONSTITUTES A CONTRACT. THE TERMS AND CONDITIONS OF WHICH ARE SET FORTH INSIDE. PLEASE READ CAREFULLY." The warning, which is printed in capital letters that are approximately 1/16 inch high, is clearly printed and easily read, even when held at arms' length distance from the naked eye.[6] Across the top of the first of two columns of print on the first page inside the folder appears this additional warning:

## CONDITIONS OF CONTRACT

Acceptance Of This Ticket By The Passenger Shall Constitute An Acceptance By The Passenger, As That Word Has Been Defined, Of All The Terms And Conditions Set Forth Herein.

This warning, in letters approximately 1/8 inch high, is also clearly printed, and its relatively larger print size makes it even easier to read than the warning on the folder's front cover. A third warning, at the bottom of the passenger copy of the ticket itself, states: "ACCEPTANCE OF THIS TICKET CONSTITUTES A CONTRACT READ TERMS AND CONDITIONS CAREFULLY." This warning, in letters slightly less than 1/16 inch high, is also clearly printed and easily read. Marek nonetheless contends that these warnings—especially the one on the folder's front cover—did not reasonably communicate the existence and importance of the terms inside, including the time limits in ticket paragraph six. We disagree.

Marek's first allegation, that the cover warning should have been "significantly more eye-catching than this," *Silvestri*, 388 F.2d at 18, asks too much of appellees. Each of the three warnings is easy to read

and appears at a prominent place in the ticket folder. Taken together, they indicate that appellees did what was reasonable to communicate to Marek and Toombs that the terms of the contract exist, are important, bind them as passengers, and should be read. We also note, as did the district court, that the warnings in this folder compare favorably with ticket notices that courts have approved,[7] and they far surpass in clarity and visibility those notices that courts have found inadequate.[8]

Marek's second allegation—that the warnings are inadequate because they do not mention paragraph six explicitly, stress the importance of contractual time limits, or indicate that passengers' legal rights may be affected by the ticket's terms and conditions—also seeks more than reasonable communicativeness entails. "[C]ases in which the carrier's liability limitations have been honored generally involve tickets with conspicuous warnings directing the passenger's attention to the contractual terms contained elsewhere," *Barbachym*, 713 F.2d at 220, but no case stands for the proposition that a warning is legally insufficient unless it includes explicit references naming each of the contractual terms or conditions having the potential to affect the legal rights of passengers. It is sufficient that this ticket contains three conspicuous warnings directing a passenger's attention to the terms and conditions inside the folder.

## B.

 Marek next attacks the validity of paragraph six itself, which contains the contractual time limits that she has admittedly failed to meet in bringing this suit. Her first claim, that paragraph six is printed in typeface too small to read, lacks merit. Although the print is small, we

---

6. Although it is not possible to identify original colors from the black and white photocopy of the ticket that appears in the record before us, *see* Brief for Appellants at 55a–60a, we have no reason to doubt that the cover warning is printed in dark brown ink on a light brown background. *See id.* at 17.

7. *See, e.g., DeNicola,* 642 F.2d at 10–11; *Lubick,* 573 F.Supp. at 906–07; *McQuillan,* 386 F.Supp. 465–66.

8. *See, e.g., The Majestic,* 166 U.S. at 379, 17 S.Ct. at 599; *Silvestri,* 388 F.2d at 14; *O'Connell v. Norwegian Caribbean Lines, Inc.,* 639 F.Supp. 846, 848–49, 852 (N.D.Ill.1986).

have no trouble reading it, and the paragraph is certainly not "so muddled or illegible as to be unenforceable." *Gardner*, 388 F.Supp. at 858; *cf. Lisi v. Alitalia-Linee Aeree Italiane*, 253 F.Supp. 237, 243 (S.D. N.Y.) ("The footnotes printed in microscopic type ... as well as [a] condition ... camouflaged in Lilliputian print in a thicket of 'Conditions of Contract' ... are both unnoticeable and unreadable. Indeed, they are virtually invisible."), *aff'd*, 370 F.2d 508 (2d Cir.1966), *aff'd by an equally divided Court*, 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27 (1968) (per curiam). In addition,

> [a]lthough a passenger may almost never read all of the fine print on the ticket upon purchase, or as pleasure reading in the berth the first night at sea, the same passenger might very well be expected to consult the multifarious terms and conditions of the ticket/contract in the event of an accident resulting in a loss or injury.

*Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861 at 865 (1st Cir.1983). As a court once noted in a similar case, "the type-size in which [the time limitations] clause is printed is not the significant matter; there is both ample time and a powerful incentive to study the passage contract ticket promptly after a loss has occurred," *Lipton*, 294 F.Supp. at 311, and Marek cannot blame others—the ship owner, the company that chartered the ship for this cruise, or even the anonymous printer or type-setter who "made" this folder and its paragraph six—for her failure to read it within six months of her accident.

Marek also argues that the placement of paragraph six—a low-numbered provision located at the lower left-hand corner of the ticket folder's inside back cover—effectively hid it from her view. Although the physical placement of a contractual condition is a factor to take into account, *see, e.g., Barbachym*, 713 F.2d at 220 (noting that "the article on the limitation of liability ... is the thirtieth of thirty-five"), it is not dispositive here. Paragraph six is not harder to find or to read than any of the other provisions in this contract, and, once it is located and read, it is easily understood. There is also no requirement that a time limitation provision must be the first clause of such a ticket contract before it is legally enforceable.

Marek's final, related, argument is that paragraph six is unenforceable because it was concealed by a sheet of carbon paper in the ticket folder. Like the district court, we find this claim particularly "hard to believe." *Marek*, No. 84–2214, mem. op. at 8 (E.D.Pa. July 15, 1986) [Available on WESTLAW, DCT database]. The carbon paper is merely one page in the ticket folder, and its presence does not nullify the ticket's warnings or destroy the reasonableness of paragraph six. In addition, as we have already noted, "[a]fter a disaster ... it would seem entirely natural that any passenger suffering a loss or damage would" lift the carbon paper in the process of closely examining the ticket's provisions. *Shankles*, 722 F.2d at 867.

### C.

■ Marek's final distinct argument derives from the fact that she and Toombs shared one ticket folder. This fact has no independent legal significance. No evidence suggests that Toombs denied Marek access to the ticket at any time. Indeed, Marek's affidavit makes clear that each woman at least glanced at the folder after boarding ship. We also note that Toombs's possession of the folder is sufficient to charge Marek with notice of its provisions. *See DeCarlo v. Italian Line*, 416 F.Supp. 1136, 1137 (S.D.N.Y.1976); *Rogers v. Furness, Withy & Co.*, 103 F.Supp. 314, 316–17 (W.D.N.Y.1951).

### IV.

Judge Cardozo noted long ago that "[t]he passenger who omits to read takes the risk of the omission." *Murray v. Cunard S.S. Co., Ltd.*, 235 N.Y. 162, 139 N.E. 226, 228 (1923). For the foregoing reasons, the district court's entry of summary judgment for appellees will be affirmed.