Gregory **MILANOVICH,**
et ux., **Appellants,**

v.

**COSTA CROCIERE, S.P.A.,**
et al., **Appellees.**

No. 90–7155.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 3, 1992.

Decided Feb. 4, 1992.

Allen M. Hutter, Washington, D.C., for appellants.

George Mencio, Jr., for appellees. Daniel S. Pearson, Miami, Fla., and Mitchell H. Stabbe, Washington, D.C., also entered appearances, for appellees.

Before WALD, SILBERMAN and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellants Gregory Milanovich and Marjorie Koch–Milanovich appeal the grant of summary judgment to appellees Costa Crociere, S.p.A., an Italian cruise line corporation, and Costa Cruises, Inc., a New York corporation serving as Costa Crociere's general sales agent. For reasons given below, we vacate the judgment and remand for further proceedings on appellants' claim.

## I. BACKGROUND

Appellants Gregory Milanovich and Marjorie Koch–Milanovich, a husband and wife residing in the District of Columbia, booked passage for a one-week Caribbean cruise on an Italian flag vessel owned by appellee Costa Crociere, S.p.A. The cruise disembarked from San Juan, Puerto Rico on Feb-

ruary 6, 1988. On the morning of February 7, while the ship was in international waters, the deck chair upon which Mr. Milanovich was sitting collapsed, allegedly causing him serious injury.

On December 13, 1988, the Milanoviches made a written demand for damages on appellee Costa Cruises, Inc. Three months later, on March 31, 1989, appellants filed a personal injury action in the United States District Court for the District of Columbia. The suit was filed one year and fifty-three days after the date of the accident. The cruise company promptly moved for summary judgment claiming that the suit was time-barred by a provision of the passage ticket establishing a one-year time limit for bringing personal injury actions. Appellants opposed summary judgment arguing that another provision of the ticket invoked Italian law as the "ruling law of the contract," and that under Italian law the one-year limitation was unenforceable.[1] They submitted uncontroverted expert testimony that under Articles 1341 and 1342 of the Italian Civil Code, provisions expressly referenced in the passage ticket,[2] liability limiting provisions in certain kinds of "adhe-sion" contracts, of which a passenger ticket is one, are unenforceable against the non-drafting party unless that party gives specific written assent to such provisions. Without such written approval, they contended, the one-year limitation period in this case was unenforceable.[3]

The district court disagreed. The court reasoned that federal maritime law governed this contract, and that under federal maritime choice-of-law rules, the governing law of the contract is determined by a "center of gravity" analysis, not by the contractual intent of the parties alone. *Milanovich v. SJK Enterprises, Inc.*, 747 F.Supp. 1, 2 (D.D.C.1990). Because of the preponderance of U.S. contacts—appellants are U.S. citizens, the cruise was advertised in the U.S., the tickets were purchased and delivered in the U.S., and the ship left from and returned to a U.S. port—the court held that U.S. law, not Italian law, provided the rule of decision regarding the validity of the one-year limitation clause. *Id.* at 3. Applying U.S. law, the court found that this provision had been effectively incorporated into the contract and was legally enforceable.[4]

> THE HOLDER OF THIS PASSAGE TICKET, DO [sic] HEREBY DECLARE TO THE EFFECTS AND UNDER PROVISIONS OF ARTT. 1341 AND 1342 OF THE ITALIAN CIVIL CODE IN FORCE, THAT HE IS AWARE AND ADHERES TO ALL CONDITIONS AND CLAUSES SET FORTH IN THIS PASSAGE TICKET CONTRACT AND THAT HE SPECIFICALLY APPROVES CLAUSES ... 30 ... and 35.

1. Appellants' passage ticket came in a 13–page booklet, measuring 8½ by 3½ inches, setting out the terms and conditions of carriage. The following notice was printed on the front of the booklet in red letters against a white background:

   IMPORTANT NOTICE
   Each passenger should carefully examine this ticket, particularly the conditions on pages 2–10.
   A similar notice appeared in the upper left hand corner of the actual ticket: "By accepting or using this ticket the passenger agrees to the terms and conditions appearing on pages 2–10 of Passage Ticket Booklet."
   Article 30, printed in small type on page 9 of the ticket, provided that "[n]o action or proceeding against the Company for ... injury ... to the passenger shall be instituted, unless ... the action or suit ... is commenced within one year from the date when the ... injury occurred." Art. 35, printed on the next page of the ticket and entitled "RULING LAW OF THIS CONTRACT," provided that "[t]his passage ticket is subject to the Italian law."

2. The following passage, translated from the Italian, appeared on page 10 of the ticket immediately following Article 35's invocation of Italian law:

3. Appellants also argued that even if enforceable, under Italian law the one-year limitation period was tolled by their demand letter. Because we find that the limitation period is not enforceable, we do not reach this question.

4. The court reasoned that under U.S. law, liability limiting provisions in passenger cruise tickets are incorporated into the contract between the passenger and the cruise line if "the contents of the ticket 'reasonably communicated' the presence of the limitation term to the passenger against whom it might be invoked." *Milanovich*, 747 F.Supp. at 3 (quoting *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 245 (3d Cir.1987)). Surveying the relevant case law, the court noted that

   > the general characteristics of those tickets held to be sufficiently communicative have

In a supplemental memorandum and order, the district court considered, and rejected, appellants' argument that the district court had failed to appreciate the significance of the Supreme Court's decision in *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), in which the Court enforced a contractual choice-of-forum clause in a maritime towage contract.[5] The district court reasoned that

> [i]t is doubtful if the Supreme Court anticipated an extension of the rule of *The Bremen* so far from the [commercial] circumstances of that case as to allow a passenger ticket for a pleasure cruise to dictate, *as a matter of contract alone,* the terms and conditions upon which a shipowner would be liable to its passengers for personal injury.... The proposition may be tested by asking whether, were the situation reversed and the limitations clause less favorable to the Milanoviches under Italian law than under the applicable provision of U.S. maritime law, would it nevertheless be enforced under the rule of *The Bremen* in the circumstances of this case.

*Id.* at 5, 92 S.Ct. at 1911 (emphasis in original). Implicitly answering that question in the negative, the district court reiterated that American law, not Italian law, governed this contract and that appellants' suit was time-barred. On appeal, the Milanoviches challenge the district court's refusal to enforce the choice-of-law provision contained in their passage ticket.[6]

## II. ANALYSIS

■ The Milanoviches' cruise ticket is a maritime contract and thus the substantive law to be applied in this case is the general federal maritime law, including maritime choice-of-law rules. *See Hodes v. S.N.C. Achille Lauro Ed Altri–Gestione,* 858 F.2d 905, 909 & n. 2 (3d Cir.1988) (citing *The Moses Taylor,* 71 U.S. (4 Wall) 411, 427, 18 L.Ed. 397 (1886)), *cert. dismissed, Hodes v. Lauro Line s.r.l.,* 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989); *Siegelman v. Cunard White Star,* 221 F.2d 189, 192–93 (2d Cir.1955). The question we ultimately face is whether a provision of that contract limiting the time for suit was validly incorporated and is legally enforceable. The resolution of those questions depends, however, on the body of contract law with which we examine the contract.

■ The contract contains a provision purporting to adopt Italian law as the law of the contract, but to follow that direction and use Italian contract law to decide whether the provision telling us to use Italian law is valid would obviously be "putting the barge before the tug." *DeNicola v. Cunard Line Ltd.,* 642 F.2d 5, 7 n. 2 (1st Cir.1981) (dicta). What law should govern whether a choice-of-law provision is a valid part of a maritime contract is a difficult question, but one we need not decide because both parties here have assumed that American contract law principles control.

---

included a boldface or otherwise distinguishable warning to the passenger to read the fine print; placement of this warning on the cover of the ticket booklet; repetition of the warning elsewhere; contrast between the warning and the background on which it is printed; and opportunity afforded the passenger to study the provisions of the ticket by which he is to be bound.

*Id.* Measured against these criteria, the court concluded that "the tickets given the plaintiffs here reasonably communicated that [they] contained information of which it was in their interest to be aware." *Id.*

**5.** In *The Bremen,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the American and German parties to the contract stipulated that the English High Court of Justice would be the exclusive forum for any disputes relating to the con-

tract. The Supreme Court recognized that the English court would apply English law and, in so doing, enforce provisions of the contract that an American court would not. *Id.* at 8, 13 n. 15, 92 S.Ct. at 1912, 1915 n. 15.

**6.** Because we agree with appellants that the district court erred in refusing to enforce the contractual choice-of-law provision, we do not reach appellants' alternative arguments that (1) the reference to Articles 1341 and 1342 of the Italian Civil Code in the ticket incorporated the requirement of those provisions that the limitation period be specifically approved and therefore the one-year limitation was invalid strictly as a matter of American contract law and (2) the passage ticket did not "reasonably communicate" to appellants the presence of the one-year limitation clause.

If the choice-of-law provision is enforceable, we will use the law that it selects to evaluate the enforceability of the remainder of the contract terms. *Siegelman*, 221 F.2d at 193 (examining American law initially to determine that a choice-of-law provision selecting English law is enforceable, and then using English law to interpret a provision limiting the time for suit); *DeNicola*, 642 F.2d at 7 n. 2 (dicta).

■ Under American law, contractual choice-of-law provisions are usually honored. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971). This principle applies even when the choice-of-law clause is contained in a contract of adhesion, although courts typically scrutinize such contracts to prevent substantial injustice to the adherent. *Id.* comment b. Thus, in *Siegelman v. Cunard White Star*, 221 F.2d 189 (2d Cir.1955), the court enforced a choice-of-law provision in a cruise ship passage ticket where "there [did] not appear to be an attempt ... to evade American policy" and "there [was] no suggestion that English law [the stipulated law of the contract] is oppressive to passengers." *Id.* at 195. *See also Jansson v. Swedish American Line*, 185 F.2d 212, 218 (1st Cir.1950) (noting that "when the parties contract with the law of some particular jurisdiction in view, the law of that jurisdiction will be applicable in determining the interpretation and validity of the contract").

The district court here, however, ignored the choice-of-law clause, reasoning that *The Bremen*, in which the Supreme Court enforced a similar clause,[7] was distinguishable because it involved commercial parties of equal bargaining strength. Appellees, in turn, argue that the district court properly disregarded the choice-of-law clause—a clause that *they* drafted and included in this adhesion contract—because a contractual choice-of-law clause is only one factor to be considered in a court's choice-of-law analysis. Brief for Appellee at 14. We find neither argument persuasive.

■ First, while there are indeed statements by some district courts that a choice-of-law clause is only one factor in determining the applicable law, *see, e.g., McQuillan v. "Italia" Societa Per Azione Di Navigazione*, 386 F.Supp. 462, 468 (S.D.N.Y.1974) (dicta), *aff'd*, 516 F.2d 896 (2d Cir.1975); *Pisacane v. Italia Societa Per Azioni Di Navigazione*, 219 F.Supp. 424, 425 (S.D.N.Y.1963), they appear to express mainly the courts' understandable reluctance to automatically enforce the terms of these adhesion contracts against the passenger. *See Caruso v. Italian Line*, 184 F.Supp. 862, 863 (S.D.N.Y.1960) ("[a]lthough a recital of the law governing the contract may be determinative in a proper case, it is here but one consideration in determining choice of law *because its consensual nature is clearly fictitious*") (emphasis supplied); *Mulvihill v. Furness, Withy & Co.*, 136 F.Supp. 201, 206 (S.D.N.Y.1955) (applying U.S. law where interpretation of limitation clause "involves important considerations of internal public policy"). While these concerns warrant heightened judicial scrutiny of choice-of-law provisions in passage tickets, they do not sanction their utter disregard, especially where there are no countervailing policies of the forum implicated and where it is the nondrafting party that seeks enforcement of the choice-of-law provision.[8]

---

7. As noted above, *The Bremen* involved a choice-of-forum clause, but the Supreme Court recognized that enforcing the provision would have the effect of subjecting the contract to foreign law. *See supra* note 5.

8. Nor are we persuaded by appellees' reliance on *Hodes v. S.N.C. Achille Lauro Ed Altri–Gestione*, 858 F.2d 905 (3d Cir.1988), *DeNicola v. Cunard Line Ltd.*, 642 F.2d 5 (1st Cir.1981), and *Lubick v. Travel Services, Inc.*, 573 F.Supp. 904 (D.V.I.1983), in which the courts applied American law despite the presence of choice-of-law provisions in the passage tickets. In neither *Hodes* nor *DeNicola* did the parties actually make the argument, as appellants do here, that the choice-of-law clauses should be enforced. *Hodes*, 858 F.2d at 909 n. 2 (noting that neither party has argued or presented evidence regarding Italian law); *DeNicola*, 642 F.2d at 7 n. 2 (noting that "neither party has offered proof of, or otherwise sought to rely on English law at any stage of this proceeding"). Thus, the fact that these courts applied American law is certainly not dispositive on the question of whether a choice-of-law provision in a passage ticket should be enforced.

■ Second, the district court's conclusion that the reasoning of *The Bremen* is limited to the commercial context has been undermined by the Supreme Court's recent decision in *Carnival Cruise Lines, Inc. v. Shute*, —— U.S. ——, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), in which the Court extended the logic of *The Bremen* to contracts governing pleasure cruises. In *Carnival Cruise*, an injured cruise ship passenger filed suit in his home state despite a stipulation in the passage ticket requiring all suits to be filed in Florida. The Court recognized that the choice-of-forum clause was not the subject of bargaining, but nonetheless considered whether it was "reasonable" and therefore enforceable under American law. The Court noted that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness," *id.* 111 S.Ct. at 1528, but concluded that this particular choice-of-forum clause was reasonable and that the plaintiff had failed to satisfy the " 'heavy burden of proof' " required to set aside the clause on grounds of inconvenience. *Id.* at 1528 (quoting *The Bremen*, 407 U.S. at 17, 92 S.Ct. at 1917).

■ Under *The Bremen* and *Carnival Cruise*, then, courts should honor a contractual choice-of-law provision in a passenger ticket unless the party challenging the enforcement of the provision can establish that "enforcement would be unreasonable and unjust," "the clause was invalid for such reasons as fraud or overreaching," or "enforcement would contravene a strong public policy of the forum in which suit is brought." *The Bremen*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972); *see*

*also Carnival Cruise*, 111 S.Ct. at 1528 (finding forum-selection clause reasonable, not the product of fraud, overreaching or bad faith on the part of defendant cruise ship company).[9]

■ Appellees do not argue that enforcement of the choice-of-law provision would be unreasonable or unjust, or that they have been the victim of fraud, bad faith or overreaching; after all, *appellees* drafted the choice-of-law provision and included it in the form passage contract. Instead, appellees argue that a particular policy of the forum would be contravened by enforcement of the contractual choice-of-law clause. Under 46 U.S.C.App. § 183b(a), they say, it is unlawful

> for the . . . owner of any sea-going vessel . . . transporting passengers . . . from or between ports of the United States and foreign ports to provide . . . a shorter period for . . . the institution of suits on [claims for loss of life or bodily injury] than one year.

Appellees argue that this provision implicitly sanctions a maximum limitation period of one year and was enacted "to provide uniformity of treatment and predictability of outcome for American passengers" regardless of the nationality of the carrier. Enforcing a choice-of-law clause that will permit suit beyond one year from the date of the accident, appellees argue, would contravene this public policy. Brief of Appellees at 18–19.

The plain language of 46 U.S.C.App. § 183b, however, reveals that the provision seeks only to prevent time limitations of *less* than one year. Enforcing the choice-of-law clause here obviously does not con-

---

In *Lubick,* the court appears to have ruled that choice-of-law clauses in passage tickets are *per se* unenforceable. 573 F.Supp. at 906. To the extent that *Lubick* does indeed stand for this proposition, we disagree.

**9.** Of course, a preliminary question exists as to whether the choice-of-law clause was validly incorporated into the passage ticket. Under American maritime law, the terms and conditions in a passage ticket are deemed to be incorporated as long as they are "reasonably communicated" to the passenger. *Hodes*, 858 F.2d at 910; *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 245 (3d Cir.), *cert. denied*, 484 U.S. 852, 108 S.Ct.

155, 98 L.Ed.2d 110 (1987); *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864 (1st Cir. 1983); *cf. Carnival Cruise*, 111 S.Ct. at 1525 (noting that the passengers "essentially have conceded that they had notice of the forum-selection clause"). Appellees forcefully argue that the one-year limitation clause was "reasonably communicated" to appellants. Brief of Appellees at 19–25. They thus necessarily concede that the choice-of-law clause, printed in identical type on the very next page of the ticket, was also "reasonably communicated" to appellants and was therefore validly incorporated into the passage ticket.

travene that policy. To the extent there is an affirmative forum policy regarding time bars to suit, it is embodied in 46 U.S.C. § 763a, which provides for a three-year statute of limitations for maritime torts. Enforcing the choice-of-law clause here would clearly not undermine that policy.

### III. Conclusion

The Milanoviches' passage ticket designates Italian law as the ruling law of the contract. Appellees, the parties opposing enforcement of that provision, have not demonstrated that the choice-of-law clause is unjust or unreasonable or that its enforcement would violate American public policy. We therefore see no reason to deny enforcement of this express provision of the Milanoviches' passage ticket. Under Italian law,[10] as it was explained by appellants' expert without contradiction by appellees, the contract's one-year limitation on suit is invalid, and thus appellants' action was timely filed. The summary judgment of the district court is vacated and the case is remanded for further proceedings to adjudicate appellants' personal injury claim.

*So ordered.*

---

**10.** The parties' choice of law is presumed to exclude reference to the choice-of-law rules of the selected jurisdiction. Restatement (Second) of Choice of Laws § 186 comment b, so we need not examine what law the Italian courts would apply under these circumstances.