**Gloria F. EULAND and James Euland, Plaintiffs,**

v.

**M/V DOLPHIN IV, her engines, boilers, tackle, furniture, equipment, freights, and apparel, In Rem, and Dolphin Cruises, Inc., Dolphin Cruise Line and Ulysses Cruises, Inc., In Personam, Defendants.**

**Civ. A. No. 2:86–2558–8.**

United States District Court, D. South Carolina, Charleston Division.

June 1, 1988.

As Amended June 7, 1988.

John Hughes Cooper, Charleston, S.C., for plaintiffs.

Gordon D. Schreck, Charleston, S.C., for defendants.

## ORDER

BLATT, Chief Judge.

In this admiralty action, Gloria F. Euland seeks to recover for injuries sustained in a fall on July 11, 1985, aboard the passenger cruise ship DOLPHIN IV, operated by the Defendant Ulysses Cruises, Inc., doing business as Dolphin Cruise Line (the DOLPHIN IV, Ulysses Cruises and Dolphin Cruise Line being hereafter collectively referred to as "Dolphin"). James Euland, the husband of Gloria Euland, seeks to recover damages for loss of consortium as a result of his wife's injuries.

Dolphin has moved for summary judgment, pursuant to Rule 56, F.R.C.P., on the ground that the Eulands' claims are barred by the one-year suit limitation provision contained in the passage contract ticket governing the terms of the cruise. Plaintiffs have filed a cross-motion for partial summary judgment in their favor on the same issue. The questions to be resolved by this Court are: (1) whether there are any genuine issues of fact as to the receipt by the Eulands of the ticket containing the contractual time-bar provision relied on by Dolphin; and (2) whether that provision was incorporated in the ticket contract so as to be binding upon the Eulands. This matter was fully briefed by counsel for the parties and the Court has heard oral arguments on two separate occasions. For the reasons set forth below, the Court has determined that Defendants' motion should be granted.

## FACTUAL SUMMARY

On or about June 28, 1985, Dolphin issued its Passage Contract Ticket No. 26637 to the Eulands for a cruise on the DOLPHIN IV for a voyage from Miami to Nassau/Freeport, departing Miami on July 8, 1985, and returning on July 12, 1985. The Eulands were members of a group from the Burke High School Class of 1965 who took the cruise. According to uncontroverted affidavits of the two group leaders, Jeannette R. Singleton and Patricia Nowell Williams, each couple in the group, including the Eulands, was handed their ticket upon boarding the charter bus which took the group from Charleston to the passenger cruise terminal in Miami. Although Mrs. Euland filed an Affidavit in which she denied receiving "any document which called my attention to any legal information about when to seek relief for a personal injury," neither she nor her husband denied that they had, in fact, received the Dolphin ticket when these were delivered to the passengers.

The ticket issued by Dolphin, a copy of which is attached, was a multi-page ticket in booklet form, similar to that issued by commercial airlines. The first several pages of the ticket consisted of detachable coupons, including the "Passage Contract (Good For Passage)" coupon and "Account-

ing" coupon, both of which were removed from the booklet by the cruise line at the time of boarding, and an identical "Passenger's Copy (Not Good For Passage)," which remained in the ticket booklet that was handed back to the passengers. These coupon pages were followed by six (6) printed pages containing the ticket contract "Terms and Conditions."

At the bottom of each of the ticket coupon pages, including the passenger's copy, the following legend was printed, in conspicuous and easily readable type:

"ISSUED SUBJECT TO TERMS AND CONDITIONS PRINTED ON PAGES 1, 2, 3, 4, 5, AND 6 OF THIS CONTRACT TICKET WHICH FORM PART THEREOF. NOT TRANSFERRABLE."

Printed across the top of page 1 of the ticket booklet, in boldface type larger than the print used for the Terms and Conditions, was the following legend:

"TERMS AND CONDITIONS OF CONTRACT—READ BEFORE ACCEPTING"

Section 5 of the Terms and Conditions, on page 5 of the ticket booklet, provided in pertinent part as follows:

"NOTICE OF CLAIMS AND LIMITATION OF TIME FOR SUCH NOTICE AND FOR SUIT THEREON.

The carrier or vessel shall not be liable for any claim whatsoever (including claims for bodily injury or death) of, or with respect to, a passenger ..., unless such claim is made in writing and lodged with the carrier ... within six (6) months after such claim arose; .... Suits and actions to recover for claims shall not be maintainable unless instituted within one year of the date of their accrual; ...."

In addition to the legend on the coupon pages of the ticket, notifying passengers that the ticket was being issued subject to the terms and conditions found on the following pages, and the legend on page one directing passengers to read those terms and conditions before accepting passage, Dolphin communicated the importance of the ticket conditions to passengers by placing the ticket inside a "ticket wallet", a copy of which is also attached, containing

additional bold-print legends. These legends directed the passengers to "review the contents carefully upon receipt," and warned them not to pack the documents as they "will need them at embarkation." Another legend put passengers on notice that the cruise line's liability "is strictly limited in accordance with the terms of the Passage Contract Ticket."

Upon boarding the DOLPHIN IV in Miami, passengers were required to present their tickets to a boarding officer, who removed the ship's copies and then returned the ticket booklet and wallet, with the "Passenger's Copy," to the passenger. Dolphin was able to produce the "Passage Contract" copy of the Eulands' ticket, indicating that the Eulands must have presented their ticket booklet upon boarding, and that the "Passage Contract" page had been detached and removed by ship's personnel.

On the evening of July 11, 1985, while descending a flight of stairs on board the DOLPHIN IV, Mrs. Euland claims to have slipped and fallen and sustained injuries. The present suit was filed on September 26, 1986, some 14½ months after the accident and two and one-half months after the expiration of the one-year suit limitation contained in Dolphin's ticket.

## DISCUSSION OF LAW

Defendants move for summary judgment on the ground that Plaintiffs' actions are barred by the very terms of the ticket they purchased from Dolphin for passage on the DOLPHIN IV. Since it is undisputed that Mrs. Euland suffered her injury on July 11, 1985, and did not institute suit until more than one year thereafter, Defendants argue that the Plaintiffs, being bound by the terms of the ticket issued to them, are time-barred from maintaining this action.

Federal law provides that owners and operators of passenger cruise ships may limit their liability for personal injury or death to cases in which suit has been instituted within one year of the date when the injury or death occurred. Though this law sometimes produces harsh results, as in the case at hand, Congress nevertheless has specifically authorized a one-year suit limi-

tation in passenger ship contracts for claims of bodily injury. 46 U.S.C. § 183b(a). Additionally, courts have held that this statutory limitation should be construed liberally in the shipowners' favor. *See, e.g., Lieb v. Royal Caribbean Cruise Line, Inc.*, 645 F.Supp. 232 (S.D.N.Y.1986).

Whether a one-year suit limitation provision, such as that contained in the Dolphin ticket, is considered to have been incorporated into the passage contract and, therefore, binding upon the passenger depends upon whether such limitation was "reasonably communicated" to the Eulands. This standard of "reasonable communicativeness" has evolved in recent years as the most practical and workable standard for determining the enforceability of such provisions. *See, Lieb, supra* at 234; *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 245 (3d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987).

At least two other district courts in the Fourth Circuit have addressed the contractual effect of limitation provisions. In *Catalana v. Carnival Cruise Lines, Inc.*, 618 F.Supp. 18 (D.Md.1984), *aff'd,* 806 F.2d 257 (4th Cir.1986), the court held that the contractual effectiveness of these provisions depends on whether the provisions are incorporated into the contract for passage. This determination is "often made by examining the form of the ticket used to see whether it provided adequate notice to the passenger that the conditions were to be part of the passage contract." *Id.* at 23. That court referred to another case within our circuit, *The City of Norfolk*, 13 F.Supp. 511 (D.Md.1936), and noted that court's conclusion that the property damage limitation clause involved therein was part of the contract and that " 'the attention of the ticket holder was appropriately called to the continuation of the contract terms by the wording on the face of the ticket.' " *Catalana*, 618 F.Supp. at 24, citing *The City of Norfolk*, 13 F.Supp. at 513. Accordingly, the *Catalana* court stated:

> [T]he defendant in this case called attention to the contract conditions by inserting legends on the front of the ticket and in the brochure given to the passengers upon embarkation. There is little more

that the defendant could have done to call the contract conditions to the attention of the passengers and to impress upon them their importance. These references were adequate to incorporate the limitation and venue provisions into the passage contract.

*Catalana*, 618 F.Supp. at 24.

Whether such limitation provisions are enforceable in a particular cruise line ticket has consistently been held to be a question of law for the Court to decide, and summary dismissal has been held appropriate in similar cases in numerous other jurisdictions. *DeNicola v. Cunard Line Ltd.*, 642 F.2d 5 (1st Cir.1981) (affirming summary judgment based on one-year limitation provision in ticket contract); *Foster v. Cunard White Star*, 121 F.2d 12 (2d Cir.1941) (upholding dismissal of complaint); *Scheibel v. Agwilines, Inc.*, 156 F.2d 636 (2d Cir.1946) (affirming grant of directed verdict for shipowner based on one-year ticket provision); *Schwartz v. S.S. NASSAU*, 345 F.2d 465 (2d Cir.1965), *cert. denied,* 382 U.S. 919, 86 S.Ct. 294, 15 L.Ed.2d 234 (1965) (upholding summary judgment for shipowner); *Catterson v. Paquet Cruises, Inc.*, 513 F.Supp. 645 (S.D.N.Y.1981) (granting summary judgment for shipowner); *DeCarlo v. Italian Line*, 416 F.Supp. 1136 (S.D.N.Y.1976) (dismissing complaint for failure to state a claim based on contractual time-bar); *Furr v. Societa Ital. Transp. Marit., Genoa, Italy*, 162 F.Supp. 645 (S.D.N.Y.1958) (granting shipowner summary judgment); *McQuillan v. "Italia" Societa Per Azione Di Navigazione*, 386 F.Supp. 462 (S.D.N.Y.1974), *aff'd,* 516 F.2d 896 (2d Cir.1975) (affirming grant of summary judgment to shipowner); *Mitchell v. American Export Lines*, 191 F.Supp. 145 (S.D.N.Y.1960) (granting summary judgment to shipowner); *Lerner v. Karageorgis Lines, Inc.*, 108 A.D.2d 648, 485 N.Y.S.2d 532 (1985) (reversing denial of shipowner's motion for summary judgment); *Valenti v. Home Lines Cruises, Inc.*, 614 F.Supp. 1 (D.N.J.1984) (granting shipowner summary judgment); *Michelotti v. Home Lines Cruises, Inc.*, 1986 AMC 480 (D.N.Y.1985) [available on WESTLAW, 1986 WL 2560]

(granting shipowner summary judgment); *Ciliberto v. Carnival Cruise Lines, Inc.*, 1986 AMC 2317 (E.D.Pa.1986) (granting shipowner summary judgment); *Strauss by Strauss v. Norwegian Caribbean Lines*, 613 F.Supp. 5 (E.D.Pa.1984) (granting shipowner summary judgment); *Carpenter v. Klosters Rederi*, 604 F.2d 11 (5th Cir.1979) (reversing denial of shipowner's motion for summary judgment); *Miller v. Lykes Brothers Steamship Co., Inc.*, 467 F.2d 464 (5th Cir.1972) (affirming summary judgment for shipowner based on one-year limitation in ticket, both as to wife's injury claim and husband's loss of consortium claim); *Williams v. Holland America Cruises*, 1981 AMC 492 (E.D.Mich.1980) (granting shipowner summary judgment); *Hahn v. Norwegian America Line*, 1973 AMC 794 (N.D.Ill.1971), *aff'd*, 1973 AMC 803 (7th Cir.1972), *cert. denied*, 409 U.S. 966, 93 S.Ct. 270, 34 L.Ed.2d 232 (1972) (upholding grant of summary judgment to shipowner); *Braun v. Carnival Cruise Lines, Inc.*, 749 F.2d 732 (11th Cir.1984) (affirming grant of summary judgment to cruise line).

In the case at bar, Plaintiffs' counsel argues that summary judgment should be denied because Dolphin did not do all that it could have done to have brought home to the Eulands the significance of the time limitation provisions contained in its ticket. Plaintiffs' counsel attempts to support this argument by comparing Dolphin's ticket with tickets of more recent vintage from other cruise lines. The Court has no doubt that, with the benefit of hindsight, one attempting to design the "ideal" cruise ticket might well do something more to bring home to the average passenger the significance of the limitation provisions contained in the ticket. However, the "reasonably communicative" test, as applied by the great majority of jurisdictions, does not impose on the shipowner the duty to design the "best" ticket or an "ideal" warning. That test requires only that the shipowner employ "reasonable"

means to communicate the importance of the ticket provisions to the passenger. As the Court in *Marek* said,

> There is no situation where, from hindsight, one could not imagine the shipowner doing some little bit more to draw attention to the limitation clause.... Thus, even though the courts continue to use the "all it reasonably could" language, application of the standard involves notions of reasonableness and not hypothesizing some further step the shipowner could possibly have taken.

*Marek, supra,* at 245. In the instant case, this Court expressly finds, in comparison with the many other tickets it has examined, the Dolphin ticket fully complies with the "reasonably communicative" test, which test it believes to be the correct principle to apply under the circumstances here involved. Additionally, the court finds that the provisions in dispute herein, as well as their importance, were called to the attention of the passengers, including the Eulands, and that the references were adequate to incorporate the limitation provisions into the contract.

## CONCLUSION

The Plaintiffs in this action have raised no genuine issue of fact as to their receipt of the Dolphin ticket for the cruise on the DOLPHIN IV. For the reasons stated above, the Court has concluded that the one-year suit limitation provision was incorporated in the Dolphin ticket and was binding on the Plaintiffs so as to bar these actions.

It is, therefore,

ORDERED, that Plaintiffs' Partial Motion for Summary Judgment be, and the same hereby is, denied, and Defendants' Motion for Summary Judgment be, and the same hereby is, granted.

Let judgment be entered in favor of Defendants, each side to bear their own costs.

IT IS SO ORDERED.

APPENDIX

TICKET

| ULYSSES CRUISES, INC. | PASSAGE CONTRACT (GOOD FOR PASSAGE) | CONTRACT TICKET |
|---|---|---|

PANAMANIAN REGISTRY

26637

EULAND, JAMES      A
EULAND, GLORIA     B

MIA    MIA

GRPS CO    GROUP # 01350  FAXID#  30977 JULY 08, 1985 16:30
RAVENEL TRAVEL AGENCY
32 VENDUE RANGE    S.S. DOLPHIN IV

CHARLESTON    SC  29401

FARES AS AGREED

6/28/85

ISSUED SUBJECT TO TERMS AND CONDITIONS PRINTED ON PAGES 1, 2, 3, 4, 5, AND 6 OF THIS CONTRACT TICKET WHICH FORM PART THEREOF.  NOT TRANSFERABLE

## TERMS AND CONDITIONS OF CONTRACT—READ BEFORE ACCEPTING

In consideration of the sum of money herein stated ULYSSES CRUISES INC. as operator agrees to accept the persons herein named as passengers for the voyage described subject to the terms of this contract stated on this page and successive pages.

The purchaser hereof covenants and warrants that he is duly authorized by or on behalf of all the passengers named herein to agree to all the stipulations of this contract stated on this page and successive pages and by accepting or using this ticket he and they agree that the terms hereof shall be binding on them with the same force and effect as if each of them signed this contract.

When used herein, the term "carrier" means ULYSSES CRUISES INC.

## 1. FARE, ACCOMMODATIONS AND EMBARKATION

(a) Fare is to be paid in full before the departure of the vessel, and, upon the sailing of the vessel, shall be considered fully earned and shall not be returned in any event, except as hereinafter provided.

(b) The fare shown herein is based on the tariff in force at date of issue.  Any increase in tariff rate at any time up to the date of sailing shall be a surcharge to the fare herein, which shall be paid in full before the departure of the vessel.  In the event of such surcharge, the passenger may receive a refund of all monies paid hereunder by electing to cancel this contract by written notice to the carrier within seven (7) days after notification of such surcharge, or, if such notification is given less than seven (7) days before departure at any time up to such departure.

(c) If the passenger desires to cancel this contract for any other reason, he may do so by giving written notice to the carrier not less than four (4) weeks before the scheduled sailing date, in which event 90% of the fare paid hereunder shall be refunded.  In the event that because of bona fide illness or unforeseeable circumstances which shall prevent the passenger from sailing arising subsequent to such period, the passenger may cancel this contract by giving written notice to the carrier's representative. DOLPHIN CRUISES INC., at 1001 N. America Way, Miami, Florida 33132, as soon as practicable thereafter but not less than one (1) week before the scheduled sailing date, together with written proof of illness or circumstances, in which event

80% of the fare paid hereunder shall be refunded. No refund will be made if notice is not given as above provided.

(d) This passage ticket is personal and cannot be assigned, hypothecated or transferred to other persons than those named as passengers herein.

(e) Passengers shall arrive at the vessel one hour before the hour fixed for sailing. Passengers who do not engage definite accommodations (room or berth) when purchasing their tickets do so at their own risk and can be assigned only to such accommodations as may be vacant, for which they must pay the regular rate for such accommodations, less the amount already paid for this ticket. A passenger is not entitled to the occupancy of an entire stateroom unless all berths therein are bought and paid for by him.

PAGE 1

(f) The carrier may cancel this contract and decline to carry, or disembark at any port called at by the vessel, any passenger who may be suffering from any contagious or infectious disease, or whose presence may, in its opinion, be detrimental to the comfort, enjoyment or safety of other passengers, the vessel, or her crew.

The carrier shall not be liable for thus declining to carry or disembarking a passenger, except that the unused portion of the fare received for such passenger shall be returned, less the expense that the carrier may be put to on his account and less the commissions paid to agents.

If a passenger is excluded or deported by the immigration authorities at a port of landing, no claim shall be made against the carrier on that account.

(g) This ticket is valid only for the sailing name herein: if no sailing date is indicated the fare indicated herein will be adjusted in accordance with fares in effect at the time that a definite sailing date is agreed upon and noted on this ticket; if no sailing date is indicated, this ticket shall become void two years from its date and no portion of the fare paid herein will be refunded thereafter.

(h) The carrier shall not be liable for the refund of any fare if the passenger leaves the vessel or the cruise for any reason whatsoever at any intermediate port.

2. RIGHTS OF THE CARRIER

(a) The vessel shall have liberty to proceed without pilots, to tow and assist vessels, including those of the carrier, in all situations, to put back to or in to, call or stop at any port or place, on land or at sea, in or out of the route of the usual or advertised voyage, whether customary or not, in any order, once or oftener, (even though doing so may involve going backwards or away from the port of destination), and to do so for any reasons which are sufficient in the judgment of the carrier or the Captain (including that of offering or rendering assistance in an effort to preserve life or property) and to deviate from the direct or customary or advertised course for any of the above reasons.

(b) In emergencies, or if the vessel be unduly delayed or prevented by any cause from sailing or proceeding in the ordinary course or from continuing or completing her voyage, the carrier, at its option, may either refund the proportionate part of the fare based upon the days in the cruise which will represent the value of the unperformed voyage or portion thereof, or, the carrier may transship the passenger and his baggage by another vessel to the port of disembarkation, and upon such refund or transshipment, the carrier shall be released from all further liability hereunder. If the passenger is transferred to another vessel on which the regular quoted rate for the service is less than the rate for such service under this contract, the difference will be reimbursed to the passenger by the carrier. In no event will the carrier be responsible for damages, consequential or otherwise, in respect to cancelled, interrupted or extended voyage.

(c) The responsibility of the carrier hereunder is limited to the period while the passenger or his baggage or property are on board the vessel or its tenders or on the premises of the carrier. Booking on connecting routes

PAGE 2

is for the convenience of the passenger only, and no responsibility of any kind is assumed thereby by the carrier, except to furnish the passenger with the connecting carrier's ticket or, in default thereof, to refund so much of the cost thereof as shall have been prepaid to the carrier.

(d) The carrier reserves the option of omitting, altering and/or curtailing any shore excursion.

(e) In case of quarantine of the vessel, involving detention of the passengers, each passenger must himself bear all risks and expenses thereby caused to him and will be charged for food and accommodations during the period of detention, payable day by day, if maintained on board the vessel, and for all other quarantine fees and expenses assessed or incurred on his account.

3. CAUSES FOR WHICH CARRIER IS NOT LIABLE

(a) The carrier shall not be liable for death or injury to any passenger arising from an Act of God, the public enemy, governmental restraint, riots, strikes, lockout, labor troubles, whoever may be the instigator thereof, civil disturbances of whatever nature; perils of the sea, harbors, rivers or other navigable waters, robbers, thieves, barratry; or for the quality, nature or consequences of medical or surgical treatment on board or ashore; or for any act, omission, fault or negligence of this or any other passengers; or for any cause beyond the reasonable control of the carrier. Unless caused by the carrier's negligence or fault, the carrier shall not be liable for death or injury to any passenger arising from collision, fire, faults or errors in navigation or management of this or any other vessel, explosions, bursting of boilers, breakage of shafts or any defect of unseaworthiness in hull, machinery or appurtenances of the vessel or tender or any defect of the carrier's premises, at whatever time existing.

(b) The carrier shall not be liable for loss or delay of any passenger, or loss of or damage or delay to his baggage, personal effects or other property arising from the

Act of God, the public enemy, governmental restraint, riots, strikes, lock-outs, labor troubles, whoever may be the instigator thereof; and disturbances of whatever nature, perils of the sea, harbors, rivers or other navigable waters, collision, stranding, fire, robbers, thieves, barratry, faults or errors in navigation or management of this or any other vessel, explosions, bursting of boilers, breakage of shafts or any defect or unseaworthiness in hull, machinery or appurtenances of the vessel or tender or any defect of the carrier's premises, at whatever time existing; or for the quality, nature or consequences of medical or surgical treatment, or for any loss, damage or delay arising from inherent defect, quality or vice of the passenger's baggage or personal effects or from the insufficiency, inadequacy or absence of baggage marks or of address or description of such baggage or effects; or for any loss or damage caused by delay in, or prevention of sailing, prolongation of the voyage, deviation or stoppage in transit, or from any calls at ports or departures from the regular course of the voyage permitted by this contract, or from seizure of the vessel under legal process; or for any act, omission, fault or negligence of this or any other passengers;

PAGE 3

or for any cause beyond the reasonable control of the carrier.

(c) The carrier shall be entitled to avail itself of all exemptions or limitations of liability contained in Title 46 United States Code, Chapter 8.

(d) The carrier may at any time without notice cancel or change the date of sailing and the passenger shall have no claim against the carrier by reason of any cancellation, prevention, change or delay of sailing for hotel or board bills, traveling expenses or other losses, delay or expense whatsoever.

4. REGULATIONS AND LIMITATIONS OF CARRIER'S LIABILITY WITH RESPECT TO PERSONAL PROPERTY

(a) The term "baggage" as used herein means only trunks, handbags, valises, sat-

chels or bundles, containing such wearing apparel and personal effects as are necessary and appropriate to the purpose of the journey and to the passenger's station in life.

(b) The carrier does not undertake to carry as baggage any merchandise, samples, furniture, household goods, tools of trade, property of others than the passenger, pictures, perishable goods, glassware, liquids, bric-a-brac, money, documents, valuables, or any of the articles listed in Title 46 United States Code, Section 181. Such articles must be shipped as commercial cargo under bills of lading. The passenger hereby warrants that no such articles are or will be contained in any receptacle or container presented by him as baggage hereunder, and, if any such articles are shipped by the passenger as baggage in breach of this warranty, no liability shall attach to the carrier on account thereof as carrier or bailee or in any other capacity either for negligence or otherwise.

(c) Each passenger paying full or half is allowed free ocean transportation of hand baggage and of one cabin or hold trunk not exceeding 200 lbs. in weight. Each additional piece will be charged for at the carrier's current rate.

(d) Passengers shall mark each piece of baggage with full name and address, together with the name of the ship, the cabin number, and the destination, and the carrier shall not be liable for loss, damage, or delay resulting from the passenger's failure to mark baggage plainly as directed.

(e) Passengers are specially warned not to place in their baggage inflammable matter of any kind, such as matches, gun powder cartridges, films, etc. Such articles if deemed dangerous by the master of the vessel, may be thrown overboard or destroyed at any time without liability. Should loss, damage or delay to the ship or her cargo, or to any of the passengers, the crew or other persons on board, be caused by dangerous articles brought on board by a passenger, such passenger will be held liable for the full amount of any damages resulting therefrom. Passengers are also warned not to bring on board articles, the importation or exportation of which may be forbidden, or which do not conform to the customs or police regulations, and laws of any country to which the vessel may go in the course of her voyage or from which the vessel may embark. A passenger violating this rule will be held liable for all loss, damage delay resulting therefrom.

(f) Baggage remaining unclaimed on arrival of the vessel will be delivered to the Customs and stored as designated by the Customs

PAGE 4

authorities at the passenger's risk and expense.

(g) Each passenger represents, and it is hereby agreed, that the value of each piece of his baggage as defined in Section 4(a) of this contract does not exceed US fifty ($50.00) dollars and that the total value of all property taken with him on the voyage and carried on his person or retained in his possession, does not exceed US one hundred ($100.00) dollars. The carrier's liability, if any, (and whether or not excess baggage is carried and paid for) shall not exceed the above amounts per item and US one hundred ($100.00) dollars in total in the event of loss, damage or delay to any of the passenger's property taken with him on the voyage, the fare for the voyage and the rate of excess baggage tariff being in part based upon the above valuations. Nevertheless, each passenger may, prior to embarkation deliver a declaration in writing, specifying a higher value, to the carrier's representative, DOLPHIN CRUISES, INC., at 1001 N. America Way, Miami, Florida 33132, and pay an additional amount of five (5%) percent of the excess of value specified by the passenger over the above amounts for which a written receipt must be obtained, in which case the carrier's liability shall not exceed such specified higher value. Any liability of the carrier for partial loss of or damage to baggage and all other property taken on the voyage shall be computed pro-rata in the basis of the valuations mentioned herein above or the actual value, whichever be less.

(h) A reasonable amount of space in a deposit box or safe on board, if the vessel

is so equipped, will be allowed each passenger upon request, but, in consideration of the carrier's furnishing such deposit box or safe without extra cost to passengers and inasmuch as no charge is made therefor, it is mutually agreed that the carrier's liability, if any, for loss of, or damage to, the deposit made therein by the passenger shall not be increased by reason of the deposit being made. In the event of a declaration of excess value, as herein provided, the carrier may require that valuables be placed in the custody of the Purser, but without assumption of any increased responsibility on the carrier's part.

(i) The carrier does not assume any responsibility for unchecked baggage, nor for any articles which the passenger retains under his personal control, in his cabin or elsewhere.

(j) Baggage, hand baggage or other property of the passengers shall neither pay nor receive any general average contribution.

## 5. NOTICE OF CLAIMS AND LIMITATION OF TIME FOR SUCH NOTICE AND FOR SUIT THEREON

The carrier or vessel shall not be liable for any claim whatsoever (including claims for bodily injury or death) of, or with respect to, a passenger or his baggage, or personal property, unless such claim is made in writing and lodged with the carrier in care of DOLPHIN CRUISES, INC., at 1001 N. America Way, Miami, Florida 33132, within six (6) months after such claim arose; and the failure to make and lodge as above provided shall bar all suits, actions and claims no matter by whom instituted or made. Suits and actions to recover for claims shall not be maintainable unless instituted within one year of the date of their accrual; these limitations shall be applicable although the carrier be a non-resident or foreign corporation, and even though the

### PAGE 5

vessel be registered under a foreign flag. The requirement of this clause can be waived only by express written agreement of a director of the carrier having authority in the premises. In any case where the time fixed in this ticket for filing claims or instituting suits and actions to recover for claims is less than that allowed by law, such time is hereby extended so as not to exceed the minimum lawful time. The foregoing limitations shall be applicable both to suits brought in personam against the carrier or in rem against the vessel.

## 6. GENERAL PROVISIONS

(a) All limitations, exceptions and conditions herein contained as to the liability of the carrier shall also apply to the liability, if any, of its agents, vessels, tenders, employees or other representatives or charterers of the vessel, and also to the liability, if any, of owners, agents, employees and other representatives of any substituted vessel.

(b) The illegality or invalidity of any paragraph, clause, or provision of this contract shall not affect or invalidate any other paragraph or provision thereof.

(c) All suits brought by passengers or their representatives against the carrier may be brought only before competent courts of the U.S.A.

(d) The term "fare" as used herein shall be deemed to include all costs of passage plus taxes and surcharges and shall be deemed to mean "passage money".

ULYSSES CRUISES, INC.

### PAGE 6

### TICKET WALLET

**EMBARKATION**
Embarkation begins three hours before sailing, and all passengers must be aboard not later than 30 minutes before sailing. Please consult your passage ticket for the sailing time of your cruise.

**WELCOME ABOARD!**
Welcome aboard your **Dolphin Cruise Line.** This ticket wallet contains your cruise documents. Please review the contents carefully upon receipt. Do not pack these documents, as you will need them at embarkation.

**BAGGAGE**

Each piece of luggage, including those you will carry aboard yourself, should have both a baggage tag and luggage identification sticker affixed to it. Be sure all information is filled out. Checked baggage will be delivered directly to your stateroom.

**INSURANCE**

It is recommended that passengers obtain baggage and accident insurance prior to departure because liability is strictly limited in accordance with the terms of the Passage Contract Ticket. Insurance is available through your travel agent.