**Bernice COLEMAN, Plaintiff,**

v.

**NORWEGIAN CRUISE LINES, Defendant.**

**No. 90–0464–CV–W–9.**

United States District Court, W.D. Missouri, W.D.

Jan. 7, 1991.

**1492**

Michael W. Manners, Paden, Welch, Martin & Albano, P.C., Independence, Mo., for plaintiff.

Robert Casey McGinnis, Kirwan, Altergott, Winger & Cave, Kansas City, Mo., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

Plaintiff Bernice Coleman filed this action against defendant Norwegian Cruise Lines alleging that as a result of defendant's negligence, she sustained personal injuries while on board defendant's cruise ship. Defendant filed a Motion to Dismiss in which it argues that plaintiff's claim is barred by the one-year statute of limitations contained in the ticket issued to plaintiff. Defendant also argues for dismissal based on improper venue due to a forum selection clause contained in the ticket which set venue in Dade County, Florida. This court ordered defendant's Motion to Dismiss treated as a summary judgment motion because defendant submitted an affidavit in support of its motion. *See* Rule 12(b), Federal Rules of Civil Procedure.

### I. *Facts*

In May 1988, plaintiff contracted for passage on defendant's cruise ship, the *M/S Skyward*. Plaintiff made her purchase through her travel agent by initially paying one-third of the ticket purchase price. She paid the balance of the price in mid-June 1988.

On July 7, 1988, defendant issued a "Passenger Ticket Contract" (hereafter "Ticket") to plaintiff. The Ticket reserved passage for plaintiff and her husband on the *M/S Skyward*, which was set to sail on August 6, 1988, from Miami, Florida. Plaintiff received her ticket in late July or early August, 1988.

On August 7, 1988, while on board the *M/S Skyward*, plaintiff slipped and fell as she attempted to climb a flight of stairs between an upper and lower deck of the ship. As a result of her fall, plaintiff sustained personal injuries.

Plaintiff filed her Complaint on May 21, 1990, more than 21 months after the fall on defendant's ship.

Plaintiff's Ticket is a multi-page leaflet similar to an airline ticket.[1] The leaflet contains five pages bound along the left-hand side. Because printing appears on both sides of three of the pages, the leaflet contains eight printed pages. The leaflet pages, in order, include: the "Agent's Copy" (page 2); a clause limiting defendant's liability for lost or damaged baggage (page 3); the "Passenger's Ticket" (page 4); the "Passenger's Copy" of the ticket (page 5); and the terms and conditions of the "Contract of Passage" (pages 6 through 8). Each page measures approximately 3½ inches in width and 9½ inches in length.

The front of the first four pages of the leaflet (pages 1, 2, 4, and 5) are identical. On each of these pages, defendant's corporate emblem is printed in red ink in the upper, left-hand corner. Immediately to the right of the emblem, the words **"NORWEGIAN CRUISE LINE"** are printed in black, bold-faced capital letters. To the right of this, an address and the words "A Division of Kloster Cruise Line" appear in smaller, black print. In the upper, right-hand corner, the words "Passenger Ticket CONTRACT" are printed in white in a black box. In the lower, right-hand corner, there is a red box measuring ⅝ inches in width and 3⅝ inches in length. Within this red box, the following words are printed in white:

> **IMPORTANT NOTICE:** The passenger's attention is specifically directed

---

1. Neither party presented the actual Ticket issued to plaintiff. However, plaintiff submitted an original blank sample of a Ticket which plaintiff says is identical to plaintiff's Ticket. Defendant submitted a photocopy of a blank sample, along with the affidavit of Anita O. Davis, defendant's Director of Customer Rela-

tions, in which Davis states that the photocopied Ticket sample was the "blank form used by Norwegian Cruise Lines" at the time plaintiff purchased her Ticket in 1988. The samples are identical. Accordingly, the samples will be referred to in this opinion as plaintiff's Ticket.

to the terms and conditions of this contract appearing on pages 6, 7, and 8. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.

The words **"IMPORTANT NOTICE"** are printed in bold-faced, capital letters.

At the top, left-hand side of page 6, the following notice, printed in grey ink, prefaces the contract terms and conditions:

**Passengers are advised to read the terms and conditions of the Passenger Ticket Contract set forth below.**

**Acceptance of this Passenger Ticket Contract by Passenger shall constitute the agreement of Passenger to these Terms and Conditions.**

**NORWEGIAN CRUISE LINE**

Immediately below this notice, the words **"Contract of Passage"** are printed in white, bold-faced type in a small grey box. Below this, the words "Kloster Cruise Limited, d/b/a Norwegian Cruise Line" are printed in grey, ordinary type-size.

The terms and conditions of the Ticket are printed on pages 6 through 8 (the last three pages of the leaflet), beginning below the notice and headings described in the paragraph above. They are set forth in 28 numbered paragraphs and are printed in small but legible print.

Paragraph 13 of the terms and conditions, which contains the one-year statute of limitations that defendant relies on in arguing for dismissal or summary judgment, states:

No suit shall be maintained against the Carrier for delay, detention, personal injury, illness or death of passenger unless written notice of the claim with full particulars be delivered to the Carrier or its agent at its office at the port of sailing or at the port of termination within six (6) months from the day when such delay, detention, personal injury, illness or death of the passenger occurred; and in no event shall any suit for any cause against the Carrier with respect to delay, detention, personal injury, illness or death be maintainable, unless suit shall be commenced within one (1) year from the day when the delay, detention, personal injury, illness or death of the passenger occurred, notwithstanding any provision of law of any state or country to the contrary.

Paragraph 28 of the terms and conditions contains the forum selection clause which defendant also argues entitles it to dismissal or summary judgment: "It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from or in connection with this Contract and the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida, U.S.A."

II. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party

who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 106 S.Ct. at 2512.

### III. *Discussion*

#### A. *Summary Judgment Based on the One Year Limitations Period*

Defendant argues that the one year limitations period set forth in paragraph 13 of the plaintiff's Ticket was incorporated into the contract between plaintiff and defendant and, therefore, binds plaintiff. Thus, defendant argues that because plaintiff filed her Complaint more than one year after plaintiff's alleged injury, plaintiff's claim is barred. Plaintiff argues that the one year limitations period is unenforceable because she was not given reasonable notice of the limitation clause.

Under 46 U.S.C. § 183b(a), a carrier is permitted to contract for a one year limitations period regarding personal injury claims. Section 183b(a) provides:

It shall be unlawful for the manager, agent, master or owner of any sea-going vessel (other than tugs, barges, fishing vessels and their tenders) transporting passengers or merchandise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred.

A passenger will be bound by a statute of limitations provision in the contract of carriage if the provision is incorporated into the body of the contract. However, because such a provision clearly benefits the shipowner while limiting its passengers' ability to seek legal recourse, courts have been hesitant to honor the shortened period of limitations permitted by § 183b(a) unless the carrier has made a reasonable effort to warn passengers of the notice and filing requirements. *Barbachym v. Costa Line, Inc.,* 713 F.2d 216, 218–19 (6th Cir. 1983); *Silvestri v. Italia Societa Per*

*Azioni Di Navigazione,* 388 F.2d 11, 17 (2d Cir.1968).

The "reasonableness" of the warning or notice given to passengers of the critical contract terms has uniformly been held to be a question of law that is appropriately decided by the trial judge without submitting the issue to a jury. *Marek v. Marpan Two, Inc.,* 817 F.2d 242, 244–45 (3rd Cir. 1987), *cert. denied,* 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987); *Barbachym,* 713 F.2d at 218; *De Nicola v. Cunard Line, Ltd.,* 642 F.2d 5, 11 (1st Cir.1981).

In *Silvestri v. Italia Societa Per Azioni Di Navigazione,* 388 F.2d at 17, Judge Henry Friendly articulated a standard to be used in determining whether notice is reasonable. He stated that "the thread that runs implicitly through the cases sustaining [cruise line limitations periods] is that the steamship line had done *all* it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his [or her] legal rights." (Emphasis added.) However, the majority of Circuits have rejected the rigid *Silvestri* test and have adopted the less stringent "standard of reasonable communicativeness." *Spataro v. Kloster Cruise, Ltd.,* 894 F.2d 44, 46 (2nd Cir.1990); *Marek,* 817 F.2d at 245; *Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 864 (1st Cir. 1983); *Barbachym,* 713 F.2d at 219.

 The "reasonable communicativeness" test "does not require the shipowner to design the 'best' ticket or an 'ideal' warning. [The] test requires only that the shipowner employ 'reasonable' means to communicate the importance of the ticket provisions to the passenger." *Euland v. M/V Dolphin IV,* 685 F.Supp. 942, 946 (D.S.C.1988). In *Marek,* 817 F.2d at 245, the court stated:

> There is no situation where, from hindsight, one could not imagine the shipowner doing some little bit more to draw attention to the limitation clause.... Thus, even though the courts continue to use the "all it reasonably could" language, application of the standard involves notions of reasonableness and not

hypothesizing some further step the shipowner could possibly have taken.

The "reasonable communicativeness" test must be applied on a case-by-case basis, *Muratore v. M/S Scotia Prince,* 845 F.2d 347, 351 (1st Cir.1988); *Shankles,* 722 F.2d at 864. The burden of proof is on the carrier to show that it made a reasonable effort to warn its passengers of its liability limitations. *Barbachym,* 713 F.2d at 219; *O'Connell v. Norwegian Caribbean Lines, Inc.,* 639 F.Supp. 846, 848 (N.D.Ill.1986).

 In applying the "reasonable communicativeness" test, a court should apply a two-pronged test to determine whether a shipowner has given reasonable notice of the time limitation clause contained in its carrier contract. *Shankles,* 722 F.2d at 865; *Kendall v. American Hawaii Cruises,* 704 F.Supp. 1010, 1015 (D.Haw.1989); *Lieb v. Royal Caribbean Cruise Line, Inc.,* 645 F.Supp. 232, 234 (S.D.N.Y.1986).

The first prong focuses on the manner in which the crucial language is presented in the Ticket. *Shankles,* 722 F.2d at 865. Consideration should be given to the presence, placement, conspicuousness and clarity of any notice directing the passenger's attention to the limitations clause, where the limitations clause is placed in relation to the remainder of the ticket, the size of type used in printing both the notice and the limitations clause and the ease with which the passenger can read the limitations clause. *Id.; Kendall,* 704 F.Supp. at 1015; *Lieb,* 645 F.Supp. at 234.

Courts have emphasized the presence and placement of any notice directing the passenger's attention to the limitations clause. Where the face of the passenger contract ticket contains a conspicuous notice directing the passenger's attention to the limitations clause contained within the ticket, courts have uniformly held that the passenger is bound by the limitations clause even though the passenger may not have read the contract. *See Barbachym,* 713 F.2d at 220 ("[C]ourts [generally] have held that a carrier has not made a 'reasonable effort' to warn passengers of its liability limitations unless the face of the ticket contains conspicuous language directing

the passenger's attention to the contractual terms contained in other material furnished by the carrier."); *Lieb*, 645 F.Supp. at 234; *Strauss v. Norwegian Caribbean Lines, Inc.*, 613 F.Supp. 5, 8 (E.D.Pa.1984); *O'Connell*, 639 F.Supp. at 849.

In *O'Connell v. Norwegian Caribbean Lines, Inc.*, 639 F.Supp. at 848 (citations omitted), the district court stated:

> Generally, the courts have held that in order for [a notice of the limitations provision] to constitute constructive notice, [it] must (1) contain conspicuous language; (2) apprise the passengers that the contractual periods of limitation exists; and (3) inform the passengers of the importance of those limitations.

In *O'Connell*, the court stated that "conspicuousness ... is not to be judged solely by talismanic use of red ink, bold print, and capital letters, but rather by the relationship of the warning to the color, size, and type of the print surrounding it." *Id.* at 850.

Here, each of the first four sheets (pages 1, 2, 4, and 5) of plaintiff's Ticket has an identical notice. Anita Davis, defendant's Director of Customer Relations, states in her affidavit that, at embarkation, defendant's employees "lifted and retained" the third sheet (page 4, marked "Passenger's Ticket"). Also, it is reasonable to conclude that plaintiff's travel agent had removed the first sheet (page 1, marked "Agent's Copy"). Thus, two sheets (pages 2 and 5) that contained the notice would still have been attached to the Ticket at the time of and following plaintiff's injury.

The notice was conspicuous because it was prefaced by the words **"IMPORTANT NOTICE"** and was printed in white ink within a red box. In relation to the remainder of the page, there was little other printing to distract plaintiff from reading the notice provision. Furthermore, the position of the notice in the lower, right-hand corner of the page enhances its visibility. Plaintiff could hardly avoid observing the notice as she turned the pages of the Ticket which is bound on the left. .

 The notice informed plaintiff that a contractual limitations period existed. The notice specifically refers to the "terms and conditions appearing on pages 6, 7, and 8." A warning is legally sufficient even though it does not include explicit references naming each of the contractual terms or conditions having the potential to affect the legal rights of the passenger. *Marek*, 817 F.2d at 246.[2] Therefore, the fact that the notice in plaintiff's Ticket did not specifically mention the limitations clause or the paragraph in which it appears does not affect its adequacy.

The notice clearly informs plaintiff of the importance of the contractual limitations contained within the terms and conditions. It warns that "[t]hese terms and conditions affect important legal rights and the passenger is advised to read them carefully." Furthermore, at the top of the first page of the terms and conditions, plaintiff was again "advised to read the terms and conditions of the ticket set forth below."

Under the first prong of the reasonable communicativeness analysis, the manner in which the limitations clause is presented should be considered. The district court stated in *Lieb v. Royal Caribbean Cruise Line, Inc.*, 645 F.Supp. 232, 234 (S.D.N.Y.

---

2. In *Marek*, the court specifically addressed the plaintiff's argument that the warning was inadequate because it did not explicitly mention the paragraph containing the statement of limitations:

> Marek's second allegation—that the warnings are inadequate because they do not mention paragraph six explicitly ... seeks more than reasonable communicativeness entails. '[C]ases in which the carrier's liability limitations have been honored generally involve tickets with conspicuous warnings directing the passenger's attention to the contractual terms contained elsewhere,' *Barbachym,* 713

F.2d at 220, but *no case stands for the proposition that a warning is legally insufficient unless it includes explicit references naming each of the contractual terms or conditions having the potential to affect the legal rights of passengers.* It is sufficient that this ticket contains three conspicuous warnings directing a passenger's attention to the terms and conditions inside the folder.

817 F.2d at 246; *see also Barbachym,* 713 F.2d at 220 (summarizes case in which courts have found notice reasonable despite lack of specific reference to paragraph containing limitation period).

1986) (quoting *Lerner v. Karageorgis Lines, Inc.*, 66 N.Y.2d 479, 497 N.Y.S.2d 894, 896, 488 N.E.2d 824, 826 (N.Y.Ct.App. 1985)), that when " '[t]he terms and conditions ... are set out in small but legible type, [while] it may be difficult to pick out any one of the conditions, no [compelling] reason is advanced why plaintiffs ... could not have located the time-bar provisions and timely commenced suit.' "

As in *Lieb*, the terms and conditions involved in this case are set out in small but legible type. Admittedly, significant effort, good eyesight (or reading glasses) and plenty of light are required to locate and read the limitations clause. However, plaintiff overstates the matter by asserting that anyone who attempts to read the terms and conditions "will develop severe eye strain, perhaps terminal, long before reaching Paragraph 13."

▪ Although the type-size used in printing the limitations clause is a consideration, it "is not the significant matter" because "there is both ample time and a powerful incentive to study the passage contract ticket promptly after a loss has occurred." *Kendall*, 704 F.Supp. at 1016. Furthermore, there is no requirement that the time limitation clause must be the first clause of the contract terms to be legally enforceable, *Marek*, 817 F.2d at 247; the fact that the limitations clause appeared in paragraph 13 of plaintiff's ticket is not controlling.

Giving substantial weight to the conspicuous warnings that there were terms and conditions that "affect important legal rights," the limitations clause was presented to plaintiff in a "reasonably communicative" manner.

▪ Under the second prong of the analysis, extrinsic factors surrounding the purchase and subsequent retention of the Ticket should be examined. *Shankles*, 722 F.2d at 865. These factors include "the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and

any other notice that the passenger received outside the ticket." *Id.*

▪ The passenger's lack of actual knowledge of the limitations clause does not render a limitations clause unenforceable. In *Kendall*, 704 F.Supp. at 1016 (quoting *Barkin v. Norwegian Caribbean Lines*, 1988 A.M.C. 645, 650 (D.Mass.1987)), the court stated:

> 'It is misleading to focus on whether [plaintiffs] actually read the contract; rather the proper focus is on whether [they] had the opportunity to read it.' Since plaintiffs admittedly possessed the cruise ticket for the full year following the accident, they had more than sufficient opportunity to familiarize themselves with the ticket's contents.

Furthermore, plaintiff had a contractual duty to apprise herself of the cruise ticket's express terms. *Id.* at 1016. "The passenger who omits to read takes the risk of the omission." *Marek*, 817 F.2d at 247 (citation omitted). The fact that a ticket may have been in the possession of a friend or spouse is irrelevant so long as the plaintiff had the opportunity to read the terms and conditions after suffering an injury. *Id.* (citations omitted). Possession by a traveling companion is sufficient to charge a passenger with notice of its provisions. *Id.*

Plaintiff states in her affidavit that she has "no recollection" of reading the terms and conditions printed on the Ticket. She also states that no one discussed the terms with her. However, plaintiff clearly had the contractual duty to inform herself of the contract terms. The Ticket was in plaintiff's possession or her spouse's possession throughout the one year limitations period after plaintiff was injured. Nothing in the record suggests any reason why plaintiff did not have ample opportunity to read and become familiar with the contract terms during that year. The risk of not reading the contract terms falls on plaintiff.

Moreover, given the serious nature of her injuries,[3] plaintiff had a strong incen-

---

3. Plaintiff alleges in paragraph 10 of her Complaint that she sustained "severe physical and

mental pain and suffering" from injuries to her

tive to promptly determine the proper course of action for seeking compensation for her damages. *See Kendall*, 704 F.Supp. at 1016. Plaintiff had clear notice that there were terms and conditions included with her Ticket that affected "important legal rights." Therefore, with the incentive to obtain redress for her injuries and with ample time to study carefully the terms of her Ticket, the extrinsic factors point to holding plaintiff to the terms of the contract.

■ Based on the foregoing, the one year limitations clause contained in plaintiff's ticket is enforceable because its presence and importance was reasonably communicated to plaintiff. Therefore, defendant's Motion for Summary Judgment will be granted and this case will be dismissed.

B. *Summary Judgment Based on the Forum Selection Clause*

Defendant argues that it is entitled to dismissal or summary judgment based on improper venue because the Ticket contained an enforceable forum selection clause which requires plaintiff to bring any personal injury action in Dade County, Florida.

Because I am granting defendant's Motion for Summary Judgment based on the one year limitations clause and dismissing this case, defendant's grounds for summary judgment based on the forum selection clause are moot.

Accordingly, it is hereby ORDERED that:

1) defendant's Motion for Summary Judgment is granted; and

2) this case is dismissed with prejudice.

spinal column, head, neck, shoulders and nerv- ous system.