Jane E. THOMPSON and Michael
L. Thompson, Plaintiffs,

v.

ULYSSES CRUISES, INC., Defendant.

No. IP 91–1354–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 21, 1993.

John E. Kolas, Medley Smith Kolas & Tillman, Carmel, IN, for plaintiffs.

Frederic C. Sipe, Scott D. Pankow, Sipe Pankow Han & Rumely, Indianapolis, IN, for defendant.

### ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TINDER, District Judge.

This matter comes before the court on the motion for summary judgment filed by Defendant Ulysses Cruises, Inc. (Ulysses). The court, having considered the motion, affidavits, and supporting and opposing briefs, finds that the motion should be GRANTED.

I. *Background and Findings of Fact*

Plaintiffs, Jane E. Thompson and Michael L. Thompson (the Thompsons) booked reservations for a seven-night Caribbean cruise with Ulysses. In November 1989, approximately one week before their departure, Jane Thompson (Jane) received her "passage contract ticket" (the ticket). The ticket consisted of five pages, each approximately eight inches by three and three-fourths inches. The face page of the ticket contained the itinerary for the trip, the passengers' names, and the name of the ship. Additionally, the face page contained the following notice printed in highlighted or contrasting type in the lower right-hand corner (the notification clause):

IMPORTANT NOTICE: READ BEFORE ACCEPTING

Please read carefully the terms of this ticket contract beginning at page 1 and continuing through page 5. The terms are an integral part of the contract between passengers and the Company. In accepting this contract you agree to the terms. Attention is particularly drawn to the Company's right to exemption from and limitation of liability and to Articles 19 an 20 which limit the periods in which notification of claim is to be made and suit commenced. Failure to comply with those limitation periods will result in the loss of your rights.

The remainder of the ticket consisted of 22 "articles" setting out the terms of the contract. Among the terms were:

Art. 19—NOTICE OF CLAIM.

(a) The Company is not liable for any claim for loss of life or injury unless written notice is given within 6 months from the day when the loss of life or injury occurred in respect to any claim where Section 4283A of the Revised Statutes of the United States shall apply. Any accident or incident occurring during the passage/cruise must be promptly reported to the vessel's safety officer or medical department but such report shall not constitute the requisite written notice of claim.

Art. 20—TIME LIMIT ON SUITS. Suit to recover on any claim against the Company shall be instituted: (a) as to claims for the loss of life or injury within 1 year from the day when the loss of life or injury occurred, in accordance with Section 4283A of the Revised Statutes of the United States.

Articles 19 and 20 are referred to collectively as the limitations provisions. Jane does not allege that she attempted to read any portion of the ticket prior to her departure on the cruise.

On November 21, 1989, while aboard the SS Seabreeze, Jane slipped on a swimming pool deck, and was injured. Jane claims that the deck was slippery, and no warning of the slippery condition was given. Jane immediately reported the accident to the ship's crew, and submitted a written accident report. She received medical attention on board.

Shortly after the Thompsons returned home, Jane contacted legal counsel[1] concerning her injury. Counsel examined the ticket, but failed to advise Jane of the limitations printed on it. Instead, he advised her of a two-year statute of limitations for filing an action against Ulysses. Subsequently, the Thompsons engaged the services of another attorney (their attorney in this action), who advised them of the limitations provisions printed on the ticket.

Ulysses received the Thompsons' first written notice of claim October 14, 1991, almost two years after the incident at issue. Thus, no written notice was given pursuant to Article 19(a) of the ticket. The Thompsons filed this lawsuit November 20, 1991, seeking damages arising from the accident.

The parties agree that 46 App.U.S.C. § 183b allows a one-year limitations on suits such as the Thompsons'. The parties do not dispute the existence of the notification and limitations provisions printed on the ticket. Further, the parties do not dispute that the Thompsons were unaware of the provisions limiting the time for filing claims or lawsuits prior to being advised of them by their current attorney. The only disputed issue is whether the limitations provisions were reasonably communicated to the Thompsons.

---

1. It should be noted that the Thompsons' able counsel in this case, John E. Kolas, is not the attorney Jane initially consulted. Mr. Kolas and his firm were not contacted by the Thompsons until after the one-year limitations period had expired.

2. This standard is contrasted with the more stringent minority standard requiring the carri-

## II. *Analysis and Conclusions of Law*

■■■ A passenger is bound by the terms of the passage contract, so long as the terms are "reasonably communicated." *Spataro v. Koster Cruise, Ltd.*, 894 F.2d 44 (2nd Cir.1990). The reasonableness of the notice given to passengers of a critical contract term is a question of law that is decided by the trial judge without submitting the issue to a jury. *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 244–45 (3rd Cir.), *cert. denied*, 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987).

The Thompsons contend that the limitations provisions were not reasonably communicated to them because the type-size was small and the operative provisions were located near the end of the ticket. Likewise, they argue that the small-typed notification provision on the face page does not constitute reasonable notification of the limitations provisions.

The Seventh Circuit has not addressed this issue in a published opinion. However, the majority of Circuits has adopted a "standard of reasonable communicativeness" in similar cases.[2] *Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44, 46 (2nd Cir.1990); *Marek v. Marpan Two, Inc.*, 817 F.2d 242 (3rd Cir.), *cert. denied*, 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987); *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864 (1st Cir.1983); *Barbachym v. Costa Line, Inc.*, 713 F.2d 216, 218–19 (6th Cir. 1983).

■■ The "reasonable communicativeness" test simply requires the carrier to use reasonable means to communicate to the passenger the importance of the ticket provisions.

[T]he "reasonable communicativeness" test, as applied by the great majority of jurisdictions, does not impose on the ship-

---

er to do all it reasonably can to warn the passenger that the terms and conditions were important matters of contract affecting her legal rights. *See Coleman v. Norwegian Cruise Lines*, 753 F.Supp. 1490, 1495 (W.D.Mo.1991).

owner the duty to design the "best" ticket or an "ideal" warning. That test requires only that the shipowner employ "reasonable" means to communicate the importance of the ticket provisions to the passenger.

*Euland v. M/V Dolphin IV,* 685 F.Supp. 942, 946 (D.S.C.1988). The burden of proof is on the carrier to show that it made a reasonable effort to warn its passengers of its liability limitations. *Barbachym,* 713 F.2d at 219.

■ Courts apply a two-pronged test to determine whether the carrier made a reasonable effort to warn passengers of a time limitation clause contained in its carrier contract. *Shankles,* 722 F.2d at 865. The first prong focuses on the manner in which the crucial language is presented in the ticket. *Id.* The court considers the presence, placement, conspicuousness, and clarity of any notification clause directing the passenger's attention to the limitations clause. *Id.* It also considers where the limitations clause is placed in relation to the remainder of the ticket and the size of type used in printing the notification and limitations clauses. *Id.* Additionally, the court considers the ease with which the passenger can read the limitations clause. *Id.*

■ Typically, courts require carriers to include a conspicuous notification clause on the face of the ticket directing the passenger's attention to the contractual terms further in the contract.

> Generally, courts have held that a carrier has not made a "reasonable effort" to warn passengers of its liability limitations unless the face of the ticket contains conspicuous language directing the passenger's attention to the contractual terms contained in other material furnished by the carrier.

*Barbachym,* 713 F.2d at 219. If the face of the contract ticket contains a conspicuous notice directing the passenger's attention to the limitations clause contained within the ticket, the passenger generally is bound by the limitations clause even if she does not read the contract.

Where the face of the passenger contract ticket contains a conspicuous notice directing the passenger's attention to the limitations clause contained within the ticket, courts have uniformly held that the passenger is bound by the limitations clause even though the passenger may not have read the contract.

*Coleman v. Norwegian Cruise Lines,* 753 F.Supp. 1490, 1495 (W.D.Mo.1991). *See also, Barbachym,* 713 F.2d 216 (comparison of various ticket forms and results from previous steamship ticket cases).

■ In the present case, the face page contained a notice directing the passenger's attention to the limitations clauses contained within the ticket. The notice was conspicuous in that it was printed in highlighted or contrasting type in the lower right-hand corner. There was little other printing to distract passengers from reading the notice provisions. Furthermore, the position of the notice in the lower, right-hand corner of the page enhances its visibility. Passengers cannot avoid observing the notice as they turn the pages of the ticket, which is bound on the left. Thus, Ulysses satisfied the first prong of the "reasonable communicativeness" test.

■ Under the second prong of the "reasonable communicativeness" test, the court examines extrinsic factors surrounding the purchase and subsequent retention of the ticket. *Shankles,* 722 F.2d at 865. Such factors include: "the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside the ticket." *Id.*

■ Cruise passengers have a contractual duty to inform themselves of their contract terms. *Kendall v. American Hawaii Cruises,* 704 F.Supp. 1010, 1016 (D.Haw. 1989).

> "It is misleading to focus on whether [plaintiffs] actually read the contract; rather the proper focus is on whether [they] had the opportunity to read it." Since plaintiffs admittedly possessed the

cruise ticket for the full year following the accident they had more than sufficient opportunity to familiarize themselves with the ticket's contents.

*Id.* (quoting *Barkin v. Norwegian Caribbean Lines,* 1988 A.M.C. 645, 650 (D.Mass. 1987) (brackets in original)). The court finds nothing in the record indicating whether Jane actually read the ticket prior to departing. She does not allege that she lacked the ability to read and understand the terms of the ticket. She merely alleges in her affidavit that she was unaware of the limitation provisions contained in the "difficult to read five page ticket." Thus, although she alleges that the ticket was difficult to read, she does not allege that she attempted to read it.

■ In *Coleman,* a very factually similar case, the court commented:

Plaintiff states in her affidavit that she has "no recollection" of reading the terms and conditions printed on the Ticket. She also states that no one discussed the terms with her. However, plaintiff clearly had the contractual duty to inform herself of the contract terms. The Ticket was in plaintiff's possession or her spouse's possession throughout the one year limitations period after plaintiff was injured. Nothing in the record suggests any reason why plaintiff did not have ample opportunity to read and become familiar with the contract terms during that year. The risk of not reading the contract terms falls on the plaintiff.... Therefore, with the incentive to obtain redress for her injures and with ample time to study carefully the terms of her Ticket, the extrinsic factors point to holding plaintiff to the terms of the contract.

753 F.Supp. at 1497–98. Like the plaintiff in *Coleman,* the Thompsons had the ticket in their possession throughout the one-year limitations period following Jane's injury. Although the terms of the ticket were printed in small type, they were legible. In any event, small type is not enough to overcome the Thompsons' contractual duty to inform themselves of their contract

terms if they had ample time and opportunity to do so.

Although the type-size used in printing the limitations clause is a consideration, it "is not the significant matter" because "there is both ample time and a powerful incentive to study the passage contract promptly after a loss has occurred."

*Coleman,* 753 F.Supp. at 1497 (quoting *Kendall v. American Hawaii Cruises,* 704 F.Supp. 1010, 1015 (D.Haw.1989). Notably, there is no requirement that the time limitation clause be the first clause of the contract. *Marek,* 817 F.2d at 247. Accordingly, the fact that the limitations clause appeared in Articles 19 and 20 of Jane's ticket is not controlling.

■ Thus, given the seriousness of Jane's injuries, the Thompsons had a strong incentive to determine the correct course of action in pursuing their claim against Ulysses. The Thompsons acknowledge that they retained their tickets following the cruise. They had full opportunity after the accident to read and understand the limitation provisions contained in the ticket. Moreover, they consulted legal counsel who additionally had an opportunity to read and understand the limitations provisions.

Thus, the second prong of the "reasonable communicativeness" analysis has been satisfied, *i.e.,* the Thompsons had an adequate opportunity to examine and review the ticket following the accident and to inform themselves of the limitations provisions.

The Thompsons argue that this court should not attempt to compare their ticket to tickets analyzed in other cases without seeing copies of those other tickets. However, the court finds that the tickets referred to in the other cases were identified and described with sufficient particularity to enable the court to make an adequate comparison. Accordingly, the court finds that the limitations provisions in the Thompsons' ticket essentially conform with limitations provisions that other courts have deemed to have passed the reasonable communicativeness test.

### III. *Conclusion*

Both the notice provisions of the ticket and the extrinsic factors surrounding the subsequent retention of the ticket establish that Ulysses reasonably communicated to the Thompsons the presence and significance of the six-month notice provision and the one-year limitation of action provision set forth in the passage contract ticket. The Thompsons raise no genuine issue of material fact regarding their receipt of and opportunity to read the provisions of their passage contract ticket. Therefore, their claims are precluded by their failure to comply with the six-month notice provision and the expiration of the one-year limitation of action provision.